2 TofCT

17
5/31/01

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**FILED**
**HARRISBURG**

| | | | |
|---|---|---|---|
| NANCY DREW SUDERS | : | | |
| Plaintiff | : | | |
| | : | No. 1:CV-00-1655 | MAY 3 1 2001 |
| v. | : | | |
| | : | (Judge Rambo) | MARY E. D'ANDREA, CLERK |
| ERIC D. EASTON, et al., | : | | Per |
| Defendants | : | | DEPUTY CLERK |

## DEFENDANTS' BRIEF IN SUPPORT OF
## THEIR MOTION FOR SUMMARY JUDGMENT

### STATEMENT OF THE CASE

This is a civil rights action by a former state employee who claims that she was subjected to sexual harassment and discrimination, as well as age and political affiliation discrimination, by state officials.

Plaintiff is Nancy Drew Suders. Plaintiff was, until her voluntary resignation on August 20, 1998, employed by the Pennsylvania State Police (PSP). Defendants are the PSP, Eric Easton, William Baker, Eric Prendergast, and Virginia Smith Elliott, who were all employed by the PSP.

The complaint is premised upon Title VII of the Civil Rights Acts of 1964 and 1991 (Title VII), the Age Discrimination in Employment Act of 1967 (ADEA), and the Pennsylvania Human Relations Act (PHRA).

The complaint requests declaratory relief and damages. A jury trial has been requested.

### RELEVANT PROCEDURAL HISTORY

Defendants have moved for summary judgment in their favor. This is the supporting brief.

### FACTS

The facts material to plaintiff's claims in this action are detailed in the Statement of Material Facts and for the sake of brevity will not be repeated here. Pertinent facts from the Statement will be referenced in the argument section of this brief.

## QUESTIONS PRESENTED

I.   WHETHER DEFENDANTS EASTON, BAKER, PRENDERGAST, AND SMITH ARE ENTITLED TO SUMMARY JUDGMENT ON THE TITLE VII CLAIMS AGAINST THEM WHERE SUCH CLAIMS AGAINST INDIVIDUALS ARE BARRED?

II.  WHETHER THE PSP IS ENTITLED TO SUMMARY JUDGMENT ON THE TITLE VII CLAIMS AGAINST IT WHEN PLAINTIFF HAS NOT ESTABLISHED SEX DISCRIMINATION, A HOSTILE WORK ENVIRONMENT OR RETALIATION?

III. WHETHER THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT IN THEIR FAVOR ON PLAINTIFF'S ADEA CLAIM WHERE SUCH CLAIM IS BARRED BY THE ELEVENTH AMENDMENT?

IV.  WHETHER DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT IN THEIR FAVOR ON PLAINTIFFS' STATE LAW CLAIMS WHERE SUCH CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT?

## ARGUMENT

### Introduction

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Jalil v. Advel Corporation*, 873 F.2d 701, 706 (3d Cir. 1989), *cert. denied*, 110 S.Ct. 725 (1990). The party moving for summary judgment has the burden of demonstrating the absence of genuine issues of fact, with all reasonable inferences drawn from the record in favor of the nonmoving party. *Jalil*, 873 F.2d at 706; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

If the nonmoving party has the burden of persuasion at trial, "'the party moving for summary judgment may meet its burden of showing that the evidentiary materials of record, *if reduced to admissible evidence*, would be insufficient to carry the nonmovant's burden of proof at trial.'" *Jalil*, 873 F.2d at 706 (emphasis added), *quoting Chipollino v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.), *cert. dismissed*, 483 U.S. 1052 (1987). Thus, the moving party is entitled to judgment as a matter of law if the nonmoving party fails to establish the existence of a

genuine issue on an essential element of his case on which he has the burden of proof at trial. *Radich v. Goode*, 886

F.2d 1391, 1395 (3d Cir. 1989), *citing Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Applying these standards to this case, it becomes clear that the defendants are entitled to summary judgment

in their favor.

## I. DEFENDANTS EASTON, BAKER, PRENDERGAST, AND SMITH ARE ENTITLED TO SUMMARY JUDGMENT ON THE TITLE VII CLAIMS AGAINST THEM AS TITLE VII DOES NOT ALLOW RECOVERY AGAINST INDIVIDUAL DEFENDANTS.

In plaintiff's complaint, she demands judgment against all of the defendants under Title VII.  However,

plaintiff is not entitled to recovery against the individual defendants under Title VII.

Title VII provides in relevant part:

> It shall be an unlawful employment practice for an **employer**--
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...

42 U.S.C. § 2000e-2(a) (emphasis added).  The statute defines "employer" as "a person engaged in an industry

affecting commerce who has fifteen or more employees...and any agent of such person." *Id.* §2000e(b).

Courts have held that the statute does not impose personal liabilities on employees. *Sheridan v. E.I. DuPont*

*de Nemours and Co.*, 100 F.3d 1061, 1077 (3d Cir. 1996).  Since Title VII applies to employers only, not

employees, defendants Easton, Baker, Prendergast, and Smith cannot be held liable under Title VII.  Defendants

Easton, Baker, Prendergast and Smith are entitled to summary judgment on the Title VII claims against them in the

complaint.

## II. THE PSP IS ENTITLED TO SUMMARY JUDGMENT ON THE TITLE VII CLAIMS AGAINST IT BECAUSE PLAINTIFF HAS NOT ESTABLISHED SEX DISCRIMINATION, A HOSTILE WORK ENVIRONMENT OR RETALIATION

Title VII prohibits discrimination in hiring, discharge, and promotion in employment on the basis of race,

religion, sex, or national origin.[1]   42 U.S.C. § 2000e-2(a)(1).  Title VII is intended to eradicate economic and tangible discrimination, as well as disparate treatment. *Harris v. Forklift System, Inc.*, 510 U.S. 17, 21 (1993).

However, not all employment actions are actionable under Title VII.  The demanding standards for judging discriminatory working environments were designed to prevent Title VII from becoming a "general civility code." *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 79 (1998).  Applied judiciously, these standards "filter out complaints attacking ordinary tribulations of the workplace." *Faragher v. City of Boca Raton*, 524 U.S. 775, 781 (1998).

## A.   TITLE VII HOSTILE WORK ENVIRONMENT SEXUAL DISCRIMINATION

Plaintiff, a female public employee, alleges she was subjected to sexual harassment and retaliation, as well as discrimination based on age and political affiliation.[2]  Plaintiff claims that the individual defendants subjected her to a humiliating, debilitating work environment in which she was harassed, and generally discriminated against based on her sex, age and political affiliation.  Defendants deny plaintiff's allegations and contend that plaintiff has not established a Title VII claim of hostile work environment.

The Supreme Court has interpreted the Title VII phrase "terms, conditions, or privileges of employment" as encompassing disparate treatment by an employer that creates a discriminatorily hostile or abusive working environment. *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986).  To establish the existence of a hostile work environment, however, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Harris*, 510 U.S. at 20-21.

---

[1]There is no Title VII protection for age discrimination or political affiliation discrimination.  Defendants are entitled to summary judgment in their favor on plaintiff's age and political affiliation claims brought under Title VII.

[2]As already noted, plaintiff is not entitled to relief for the age and political claims under Title VII.

To bring an actionable claim for sexual harassment because of an intimidating and offensive work environment, a plaintiff must establish by the totality of the circumstances, the existence of a hostile or abusive working environment which is severe enough to affect the psychological stability of a minority employee. *Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir. 1990); *Vance v. Southern Bell Tel. And Tel. Co.*, 863 F.2d 1503, 1510 (11th Cir. 1989). Even if a work environment is found to be hostile, a plaintiff must also show that the conduct creating the hostile work environment should be imputed to the employer.

In *Andrews*, the Court set forth five factors that a plaintiff must establish in order to bring a successful hostile work environment claim against his or her employer: 1) the employee suffered intentional discrimination because of her sex; 2) the discrimination was pervasive and severe; 3) the discrimination detrimentally affected the plaintiff; 4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and 5) respondeat superior liability existed. *Id.*; *Spain v. Gallegos*, 26 F.3d 439, 447 (3d Cir. 1994).

The use of both a subjective and an objective standard (parts 3 and 4 above) also was explicitly adopted by the Supreme Court in *Harris*:

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive--is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is not Title VII violation.

510 U.S. at 23.

1. **Employee Suffered Intentional Discrimination Because of Her Sex**

Sexual harassment is harassment of a person because of his or her sex. *Golden v. G.B. Paper Company*, 1991 WL 157385 (E.D. Pa.). The purpose of actions under Title VII for a sexually hostile work environment is to eradicate the discrimination that occurs when men or women feel sexually intimidated by actions of the employer or actions of fellow employees that are ignored by the employer. As the Supreme Court said in *Meritor*, "Title VII

affords employees the right to work in an environment free from discriminatory intimidation, ridicule, insult...evincing a congressional intent to strike the entire spectrum of disparate treatment of men and women." *Meritor*, 477 U.S. at 64. To make out a case under Title VII, it is only necessary to show that gender is a substantial factor in the discrimination, and that if the plaintiff had been a man she would not have been treated in the same manner. *Tomkins v. Public Serv. Elec. & Gas Co.*, 568 F.2d 1044, 1047 n. 4 (3d Cir. 1977). The Third Circuit recently reaffirmed this requirement that plaintiff establish that he or she was targeted because of his or her gender. *Weston v. Pennsylvania Department of Corrections*, __F.3d__ (3d Cir., filed May 22, 2001).

Here, plaintiff alleges that employees made comments, not directly to her, about pantyhose, about little breast, about piercings in nipples and penis, about blow jobs and crimes involving sex with animals. Male employees also allegedly rubbed each other's backs and legs, and made an X motion like a wrestler (Compl. ¶ 10). These comments and actions were allegedly done in plaintiff's presence but were generally not directed toward her (SMF[3] ¶¶16-26).

In *Golden*, the employees harassed plaintiff on a regular basis by fondling and rubbing their genital areas in the presence of plaintiff, knowing that plaintiff found such conduct offensive. The Court found that there was no disparate treatment of men and women because plaintiff was upset by fellow employees because of his religious beliefs and not because of sexual intimidation or ridicule. *Id.*at *2. Thus, simply because an action is sexual in nature does not mean that it is sexual intimidation or ridicule.

The conduct described by the plaintiff in the complaint is unrelated to the disparate treatment of men and women. Although plaintiff says in her complaint that she was highly offended by the employees actions, she did not say that she felt sexual intimidation or ridicule regarding her sex. In fact, plaintiff testified that the comments were generally not directed at her and that there were never explicit advances. (Suders Depo at 48-65;87-88; SMF

---

[3]SMF refers to Defendants' Statement of Material Facts.

¶19). Although this kind of behavior is certainly not desirable in the workplace, it does not rise to the level of a Title VII action for sexually harassing work environment.

## 2.   **Discrimination Was Pervasive and Severe**

The Supreme Court has held that conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment is beyond Title VII's purview. *Oncale*, 523 U.S. 79; *see also Meritor*, 477 U.S. at 67. *Oncale* requires allegations or evidence that the behavior was so objectively offensive as to alter the conditions of the victim's employment. *See also, Faragher,* 524 U.S. 778. In short, what is illegal is a hostile work environment, not an annoying work environment. *Lynch v. New Deal Delivery Serv., Inc*, 974 F. Supp 441, 452 (D.N.J. 1997).

Additionally, to determine whether the environment is sufficiently severe, Courts look to whether there are threats of force which are not necessary for a finding of sexual harassment but can be an important factor in determining severity. *Harris* at 22. The pervasive use of derogatory and insulting terms relating to women generally and addressed to female employees personally may serve as evidence of a hostile environment, *Andrews*, 895 at 1485, and so may the posting of pornographic pictures in common areas. *Id.*

The conduct alleged in this case is not sufficiently severe or pervasive to conclude a hostile work environment. Baker's alleged wrestling move, or even the picture of the wrestler himself who makes the move, might have been annoying to plaintiff, but it does not reach the level of severe. At most, it was teasing and joking in plaintiff's presence that do not amount to discriminatory changes in the terms and conditions of her employment. Likewise, the employees joking around with each other and saying romantic things to each other, and not to plaintiff, is not severe. The employees, as part of their work as state police officers, discussing cases where people were having sex with animals or giving blow jobs also does not rise to the level of severe.

Moreover, the conduct alleged in this case is less severe and pervasive than numerous other cases where summary judgment was granted against employees who complained of hostile work environment. *See, e.g., Bowman*

*v, Shawnee State Univ.*, 220 F.3d 456 (6th Cir. 2000)(affirming grant of summary judgment; incidents where superior rubbed plaintiff's shoulders, grabbed plaintiff's buttocks, and placed finger on plaintiff's chest were not sufficiently severe to create a hostile work environment); *Bonora v. UGI Utilities,Inc.*, 2000 WL 1539077(E.D.Pa.*5)(summary judgment granted; incidents where supervisor bumped and repeatedly touched plaintiff and stared at her chest were not sufficiently severe or pervasive); *Adusumilli v. City of Chicago*, 164 F.3d 353 (7th Cir. 1998)(affirming grant of summary judgment; incidents where co-employees teased plaintiff, made sexual jokes aimed at her, repeatedly stared at her chest, and on four occasions made unwelcome contact with her arm, fingers, and buttocks were not sufficiently severe or pervasive to create a hostile work environment); *Weiss v. Coca Cola Bottling Co. Of Chicago*, 990 F.2d 333 (7th Cir. 1993)(affirming grant of summary judgment; incidents where supervisor repeatedly asked employee about her personal life, told her how beautiful she was, asked her out on dates, called her a dumb blond, put her hands on her shoulders at least six times, placed "I love you" signs in her work area, and tried to kiss her on three occasions were not sufficiently severe or pervasive to create a hostile work environment); *McGraw v. Wyeth-Ayerst Labs, Inc.*, 1997 WL 799437, at *5-6 (E.D.Pa.1997)(granting summary judgment; incidents where employee was subjected to unwelcome kissing, touching, and constant requests for a date were not sufficiently severe or pervasive); *Cooper-Nicholas v. City of Chester*, 1197 WL 799443, at *3 (E.D.Pa. 1997)(granting summary judgment; approximately eight incidents of unprofessional, offensive and callow sexual remarks over the course of nineteen months is not sufficiently severe or pervasive to create a hostile work environment); *Garcia v. ANR Freight Sys., Inc.*, 942 F.Supp. 351 (N.D.Ohio 1996)(granting summary judgment; incidents where supervisor grabbed the back of plaintiff's head and guided it towards his lap,  asked employee if he could spend the night in her hotel room, and brushed his hand against her chest were not sufficiently severe or pervasive to create a hostile work environment); *Baskerville v. Culligan Int'l. Co.*, 50 F.3d 428 (7th Cir. 1995)(reversing jury verdict in favor of plaintiff; nine incidents of offensive behavior over seven months including the use of sexual innuendo and one instance of simulated masturbation were not sufficiently severe or pervasive to create a hostile work environment).

Accordingly, even accepting plaintiff's allegations as true, the defendants conduct does not rise to the level of severe and pervasive to create a hostile work environment.

3.   **Discrimination Detrimentally Affected the Plaintiff**

The subjective factor is important because it demonstrates that the alleged conduct injured this particular plaintiff giving her a claim to judicial relief. *Andrews* at 1483.   Although plaintiff states that she was upset and scared and afraid of some of her coworkers (Suders Depo at 45, 47, 50, 74), she did not suffer any identifiable ill consequences as she did not have to go to a doctor or a psychologist (Suders Depo at 184), nor did the conduct result in her inability to do her work.  (SMF ¶47).

4.   **Discrimination Would Detrimentally Affect a Reasonable Person of the Same Sex**

This objective factor is more crucial than the subjective factor because it is here that it is determined that a work environment is sexually hostile. *Andrews* at 1483.  Congress designed Title VII to prevent the perpetuation of stereotypes and a sense of degradation which serve to close or discourage employment opportunities for women. *Id.*  Furthermore, Congress expected that Title VII would result in the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of sex. *Id.* The objective standard protects the employer from the "hypersensitive" employee, but still serves the goal of equal opportunity for women. *Id.*  Title VII simply is not designed to protect the overly sensitive plaintiff. *Harley v. McCoach*, 928 F.Supp 533, 539 (E.D.Pa. 1996); *Weston* at 10.

Here, without demonstration that the alleged sexual comments changed the terms and conditions of her employment, an overly sensitive plaintiff and not a reasonable woman could have suffered detrimental affect from the alleged behavior.  In fact, two of plaintiff's female coworkers did not find the joking, teasing and occasional cursing of the male employees to be offensive.  (Lancaster declaration at ¶ ; Gelvin declaration at ¶ ).  Plaintiff Suders was a hypersensitive plaintiff and the comments and actions of defendants cannot be held to rise to the level of a hostile work environment.  Examples of this hypersensitivity are plaintiff feeling discriminated against because

her birthday was not listed on a birthday list (Suders Depo. at 43-44; SMF ¶11), because the supervisor gave another female coworker a jacket to wear when she was cold (Suders Depo at 79; SMF ¶37); or feeling harassed because she was told she was speaking too quietly on the telephone (SMF ¶10). Even accepting all of plaintiff's allegations as true, a reasonable woman would not have believed that there was a sexually hostile work environment.

5.    **Existence of Respondeat Superior Liability**

Even if the Court disagrees with the above factors and finds there could still be issues of fact that a hostile work environment exists, there is no issue of fact as to respondeat superior liability, and plaintiff cannot establish this liability. In determining whether an employer is liable for a sexually hostile environment, courts must look to agency principles. *Meritor*, 477 U.S. at 71. According to these principles, liability exists where the defendant knew or should have known of the harassment and failed to respond. *Andrews* at 1486. Applying the above standard to this case, plaintiff's allegations in no way suggest that the PSP had actual notice of the alleged harassment until August 18, 1998 when plaintiff contacted the affirmative action officer, which was two days before she voluntarily resigned from her employment. Plaintiff did not report the alleged harassment prior to the above date (Suders Depo at 45, 47, 58, 64,65,74, 81; SMF ¶29, 30). Furthermore, employer had an adequate sexual harassment policy and complaint procedure in place during the entire time plaintiff worked there (SMF ¶59, 60). The equal employment policy was posted, as well as the EEO number and contact all of which plaintiff was aware (SMF ¶59). When plaintiff did contact the EEO officer, Virginia Smith, Smith informed her of the complaint procedure and asked her to file a complaint in order to do an investigation. (SMF ¶31-32, 35). Plaintiff does not dispute that Smith told her to file a complaint, however, she did not do so until after she quit. Nor did plaintiff approach anyone else in the PSP to complain about the alleged acts, instead she went directly to people outside the PSP. (SMF ¶30). Plaintiff simply did not avail herself of the protections the PSP provided. Thus, liability cannot be based on actual notice.

Also, plaintiff's recitation of the facts do not suggest that PSP had constructive knowledge of the harassment prior to August 18, 1998. An employer may be charged with constructive notice of a supervisor's harassment if

the supervisor is vested with unbridled authority to retaliate against an employee, *Fields v. Horizon House, Inc.*, 1987 WL 26652, *4 (E.D.Pa.), or if the harassment was so pervasive and severe or so long lasting that a reasonable employer should have become aware of it. *Meritor* at 68.   In this case, although Easton, Baker and Prendergast were all supervisors to plaintiff, they were not vested with unbridled authority over her as they could not fire her or "retaliate" against her.   Additionally, as already discussed, the acts that plaintiff alleges constitute sexual harassment, occurred over a brief four month period of time, and are not pervasive enough so that the PSP should be charged with constructive knowledge of them. Thus, the PSP did not have constructive knowledge of any alleged harassment. Accordingly, the PSP should not be held liable for the alleged acts of Baker, Prendergast or Easton.

To overcome summary judgment, plaintiff must demonstrate the existence of a genuine issue of material fact regarding both his hostile work environment and defendants' liability for the harassment. *Id.* If plaintiff fails to produce sufficient evidence on either of these issues, the defendants are entitled to summary judgment. Defendants submit that plaintiff cannot produce sufficient evidence to overcome summary judgment.   Even considering collectively the alleged incidents of discriminatory conduct described by plaintiff, they simply cannot establish a hostile work environment.

To survive summary judgment on a hostile work environment claim, plaintiff must produce enough evidence that a reasonable jury could find that her workplace was "permeated with discriminatory intimidation, ridicule, and insult" *Harris,* 510 U.S. at 21.  Plaintiff was not the target of sexual epithets or any overtly discriminatory conduct. In fact, plaintiff's alleged evidence of sexual animus could just as easily be evidence of personality conflicts, or new worker frustrations.  Plaintiff's conflicts with her coworkers, without more, are not sufficient evidence of a hostile work environment. The facts of this case are simply not adequate to create a hostile work environment.  Even if plaintiff had produced sufficient evidence to establish a hostile work environment, she could not establish the PSP's liability.  The incidents were not brought to defendant's attention for the PSP to address the problems. Thus, the PSP is entitled to judgment as a matter of law with respect to plaintiff's hostile work environment claims.

## B.    TITLE VII RETALIATION

Plaintiff also alleges that she was subjected to retaliatory discrimination under Title VII. To establish a prima facie case of discriminatory retaliation, thereby shifting the burden of production to the defendant, a plaintiff must demonstrate that: (1) he engaged in a Title VII protected activity; (2) the employer took adverse action against him; and (3) a causal link exists between the protected activity and the employer's adverse action. *Jalil*, 873 F.2d at 708.

Plaintiff has established the first element in that she filed a Pennsylvania Human Relations (PHRC) complaint on or about February 18, 1999. However, she has not satisfied the second element in that the employer did not take any adverse action. There is no adverse action because plaintiff voluntarily terminated her position and she was not discharged and that quit came on August 18, 1998, which was before the PHRC complaint was filed. Finally, plaintiff has failed to show that there was a causal link between the filing of the PHRC complaint and the voluntary termination so the third prong of the test is also not met. Consequently, plaintiff has failed to establish a prima facie case of Title VII retaliatory conduct, and the motion for summary judgment in favor of defendant should be granted on this claim also.

## III.    THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT IN THEIR FAVOR ON PLAINTIFF'S ADEA CLAIM WHERE SUCH CLAIM IS BARRED BY THE ELEVENTH AMENDMENT.

Plaintiff Mrs. Nancy Drew Suders seeks to impose liability upon the defendants based upon the Age Discrimination in Employment Act of 1967 (ADEA). Compl. ¶ 4. Although the complaint is not specific as to which comments fall under the ADEA, the complaint states that plaintiff was harassed about her age when defendant Easton stated "it's awful getting old, isn't it," or when Easton allegedly said that a 25 year old could catch on faster than plaintiff, or when Baker allegedly referred to plaintiff as "mama." Compl. ¶ 13. These claims must fail because they are barred by the Eleventh Amendment.

The Eleventh Amendment provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against nay one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The United States Supreme Court consistently has interpreted the Eleventh Amendment to preclude suits against a state or its agencies in federal court, by citizens of that state or other states. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238 (1985); *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 98 (1984); *Edelman v. Jordan*, 415 U.S. 651, 662-663 (1974); *Employees v. Department of Public Health and Welfare*, 411 U.S. 279 (1973); *Hans v. Louisiana*, 134 U.S. 1 (1890).

The Eleventh Amendment's jurisdictional bar is not dependent upon the nature of the relief requested. It is applicable to suits seeking money damages, *Edelman v. Jordan, supra*, as well as suits seeking equitable relief, *Alabama v. Pugh*, 438 U.S. 781 (1978). And, while a state may consent to suit against it in federal court, thereby waiving its immunity, Pennsylvania has not done so either generally or in this case. *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981).

Although the ADEA purports to make it unlawful for an employer,[4] including a State, to discriminate against any individual because of such individual's age, it has no such effect upon the states. The Supreme Court, in *Kimel v. Florida Board of Regents, et. al.*, 120 S.Ct. 631 (2000), recently held that the ADEA is not a proper exercise of Congress's power under §5 of the Fourteenth Amendment and so the statute's purported abrogation of the states' Eleventh Amendment immunity from suit by private individuals is not valid. *Id.* at 650. Accordingly, the defendants are entitled to summary judgment in their favor on plaintiff's ADEA claim.

---

[4]It is unclear whether plaintiff is making the ADEA claim against just the PSP or all of the defendants. If plaintiff is making this claim against the individual defendants, the claim must fail against them because the ADEA only disallows **employers** from the discrimination. The individual defendants are not considered employers for the purpose of the ADEA.

-13-

## IV.   THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT IN THEIR FAVOR ON PLAINTIFF'S STATE LAW CLAIMS BECAUSE THEY ARE BARRED BY THE ELEVENTH AMENDMENT.

In Count II, plaintiff alleges a cause of action under the PHRA and invokes the Court to exercise its pendent jurisdiction over this state law claim.  However, this Court cannot grant her that relief.

As discussed, the Eleventh Amendment grants states immunity against claims brought against it in federal court by private citizens absent their consent. *Atascadaro State Hospital v. Scanlon, supra.*  The immunity extends not just to claims against states premised upon federal law, but also to claims against state officials which are based upon state law. *Pennhurst State School and Hospital v. Halderman*, 405 U.S. 89, 105 (1984).  Congress has no authority to abrogate states' immunity for actions under the PHRA. *Id*.  Even if plaintiff had invoked the district court's pendent jurisdiction to hear their state law claims does not alter the fact that the defendants are immune for such actions.  This principle applies as well to state law counts brought into federal court under pendent jurisdiction. *Allegheny County Sanitary Authority v. U.S. Environmental Protection Agency*, 732 F.2d 1167, 1173 (3d Cir. 1984). Pennsylvania has specifically withheld its consent to suit in federal court. 42 Pa.Cons.Stat.  §8521(b).  This withholding of consent extends to the state and to state officials who are sued for actions taken in the course of their employment.  For this reason, the plaintiff's claims under the PHRA must be rejected because they are barred by the Eleventh Amendment.

## CONCLUSION

For the foregoing reasons, defendants ask the Court to grant their motion and enter summary judgment in their favor.

Respectfully submitted,

D. MICHAEL FISHER
Attorney General

BY: _Sarah C. Yerger_

SARAH C. YERGER
Deputy Attorney General

SUSAN J. FORNEY
Chief Deputy Attorney General
Chief, Litigation Section

Office of Attorney General
15th Fl., Strawberry Square
Harrisburg, PA  17120
(717) 705-2503
DATED: May 31, 2001

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

NANCY DREW SUDERS          :
    Plaintiff          :
                          :          No. 1:CV-00-1655
    v.          :
                           :          (Judge Rambo)
ERIC D. EASTON, et al.,          :
    Defendants          :

## CERTIFICATE OF SERVICE

I, SARAH C. YERGER, Deputy Attorney General for the Commonwealth of Pennsylvania, hereby certify that on May 31, 2001, I caused to be served a copy of the foregoing document entitled Defendants' Brief in Support of Their Motion for Summary Judgment, by depositing same in the United States Mail, first class, postage prepaid, in Harrisburg, Pennsylvania, upon the following:

Don Bailey, Esquire
4311 North 6th Street
Harrisburg, PA 17110

_____
SARAH C. YERGER
Deputy Attorney General

-16-