**IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NANCY DREW SUDERS** | ) | **CIVIL ACTION LAW** |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **vs.** | ) | **NO. 1:CV-00-1655** |
| | ) | |
| **ERIC EASTON, WILLIAM D.** | ) | |
| **BAKER, ERIC B. PRENDERGAST** | ) | **Judge Rambo** |
| **VIRGINIA SMITH ELLIOTT,** | ) | |
| **AND THE PENNSYLVANIA** | ) | |
| **STATE POLICE,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendants** | ) | |

**PLAINTIFF'S PRE TRIAL MEMORANDUM**

**Date Conference Held by Counsel: February 7, 2005 with Attorney's
Stretton, Attorney Bailey, Sheri Coover and Howard Hopkirk.**

**A.)    Statement of Federal Court Jurisdiction.**

This action was brought under Title VII of the Civil Rights Act of

1964, as amended, and this Court has jurisdiction based upon 28 U.S.C.

§1331 and 1343 (a) (3) and (4).

**B.)    Summary of Facts and Contentions as to Liability**

The plaintiff Nancy Drew Suders is a former employee of the

defendant, PSP. Nancy began her employment on March 23, 1998 as a

Police Communications Officer (PCO). She alleges egregious misconduct

(sexual harassment) by her supervisors, officers of the PSP, of such severity

1

nature that she was forced to resign (constructive discharge) Suders also seeks relief for 1st and 4th Amendment violations. Nancy Suder's supervisors Eric Easton, William Baker and Eric B. Prendergast subjected Suders to a continuous barrage of sexual harassment that ceased only when she was forced to resign.

Nancy Suders contacted Virginia Smith Elliott the PSP "affirmative action" officer, stating that she was being harassed and was afraid. Elliott suggested that Suders find a complaint from, but did nothing to support Nancy in obtaining the necessary forms. Elliott was insensitive and unhelpful and never even followed up on Suders pleas.

Suders had several times taken exams to satisfy PSP job requirements. Each time, Suders was told she failed, even though she felt she had passed every test. While using the lady's room one day Suders noticed one of the (unmarked) drawers in a dresser, slightly ajar which appeared to have her test in it. She opened the drawer and noticed her test was inside. She concluded her test was never forwarded through Channels for grading. Suders removed the test, because it was her own test that her supervisors had refused to even forward for evaluations. She wanted to get out of the situation she felt trapped in and having no where to go she decided to take the exam in order to procure another position within the PSP. With no help

from Smith Elliott she sought to remove herself from the daily harassment she endured.

Meanwhile the defendants had dusted the drawer put which her exam was put and the placed theft detection powder on everything in the bathroom including the toilet seat, that turned her hands blue when touched. When Nancy attempted to return the test to the unmarked drawer, her hands turned blue. The defendants then apprehended and handcuffed Nancy fir purportedly stealing her own test from a bathroom dresser drawer. "At this time Nancy had already been carrying a resignation letter in her purse because the harassment was becoming so severe she could not take it anymore". They photographed Nancy, took her finger prints, interrogated her and read her her Miranda rights. Nancy at this point pulled out her resignation letter and resigned. The defendants never brought theft charges against her, but attempted to procure charges by going to the local District Attorney for prosecution, which he refused. This was a pure set-up from the beginning to force her to leave her employment and then cover their misconduct, which they succeeded in doing.

The conduct of the PSP supervisors was obnoxious, cruel, and particularly outrageous. Repeatedly Baker, among other things would jump up cross his hands in front of his crotch screaming "suck it". Easton would

3

roll up to Nancy in his spandex shorts and lean back with his hands behind his head in a suggestive manner and he would again and again talk about sex with animals. Easton and Prendergast, would engage in offensive discussions of a sexual nature in front of Nancy once even touting the advantageous of teaching their daughters "hours to give good blow jobs" because this would help them get along in the world. Prendergast would also strut about like a Nazi Storm Trooper (to whom he was proud to be compared) to frighten Nancy. This type of conduct was an almost daily happening.

The defendants contend that a readily accessible policy for reporting complaints was in force at the time Nancy Drew Suders was being harassed on a daily basis by the defendants (PSP). The Kroll Report "*Report of the Independent Monitor for the Quarter Ending July 31, 2004 issued September 27, 2004"* was ordered by Governor Edward G. Rendell of Pennsylvania. This report was specially designed to investigate the PSP Sexual Harassment Policy and Sexual Misconduct in the PSP. The most recent "*Kroll Report*" clearly demonstrates that absolutely no policy for sexual harassment was in place for Nancy Drew Suders as well as anyone else within the PSP. The defendants will attempt to say that PSP had an adequate Sexual Harassment

policy in force at the time Nancy Drew Suders was working for PSP. This report clearly demonstrates the opposite and is an admission against interest.

**C.)    Comprehensive Statement of Undisputed Facts**

Plaintiff concurs in the Statement of Undisputed Facts set forth by defendants.

**D.)    Description of Damages**

The plaintiff Nancy Drew Suders was employed by the PSP from March 1998 to August 1998 for approximately five months. Her annual rate per hour was $13.01. She earned approximately $11,698.67 for her time employed as a PSP dispatcher. At her time of employment she was entitled to health insurance benefits, including but not limited to prescription card, eye card, dental care, an extensive and desirable retirement plan as well as life insurance. Since the year 2000 she has been employed as a Deputy Sheriff at the Fulton County Courthouse, her annual salary is estimated at $19,754.95.   Suders claims at least $201,572.80 in lost compensation plus interest.

Nancy Drew Suders estimated damages are well in the six figure range since she is asserting back pay, interest, attorney's fees, and lost wages etc. to be in excess of $250,000.00.

An employer who is found to have violated 19 U.S.C. 2615 shall be liable to any eligible employee affected for actual damages, liquidated damages, interest, and for such equitable relief as the Court may deem appropriate, including employment, reinstatement, lost wages, back pay, attorneys fees and promotions should the jury return a verdict in favor of the plaintiff, this Court must order appropriate equitable relief.

Nancy Drew Suders could have retired at 20 years with 50% of her pay and numerous benefits. 25 years with 75% of her pay and numerous benefits.  She has suffered pain, humiliation, and emotional distress.  And the plaintiff is also seeking punitive damages as per her complaint.

**E.)    Names and Addresses of Witnesses**

Nancy Drew Suders
405 E. Market Street
McConnellsburg, PA  17233

Morris L. Suders Jr.
405 E. Market Street
McConnellsburg, PA  17233

Bruce Campbell, PSP Trooper
Newville Barracks

Paul D. Weachter
Chambersburg, PA

Jodi Lancaster
c/o PSP

William Baker
c/o PSP

Eric Easton
c/o PSP

Eric B. Prendergast
c/o PSP

Virginia Smith Elliott
c/o PSP

Mikeal Fix
210 N. Clear Ridge Road
Hostontown, PA  17229

Christine Davis
365 Flying Dutchman Road
Bedford, PA  15522

Sheriff Jim Pittman
Fulton County Sheriff
Fulton County Courthouse
McConnellsburg, Pa  17233

Patty Suders Fix
107 W. Patterson Street
McConnellsburg, PA  17233

District Justice Brenda Knepper
Box 8 Fort Littleton

Senator Robert Jubelirer

William Kischer Jr.
McConnellsburg, Pa

Bonnie Keefer
Fulton County Courthouse
McConnellsburg, PA  17233

Sheriff Robert Albright
Breezewood, PA  15533


James R. Butts
118 East Wood St.
McConnellsburg, PA  17233

Jim Butts
Former President of the Union
Fulton County, PA

Nina Mellott
Secretary of the Union
531 Crossroads Rd.
McConnellsburg, PA  17233

Wayne Dowling
c/o PSP

Major Rick Brown
c/o PSP

Dwight Harvey
District Attorney Fulton County

Helen D. Litko
c/o PSP

Robert Albright

Sheriff Dill
Bedford County, PA

Betsy Linaberger
c/o PSP Deputy Director for Operations

Commissioner Miller
c/o PSP

Commissioner Evanko
c/o PSP

Lisa A. Ritter P.C.

**F.)    Summary of Expert Testimony**

The plaintiff will seek the expert testimony of Lisa A. Ritter, CPA, from Boles Metzger Brosius & Ritter PC. She will determine the present worth as well as future worth of the potential damage in the above captioned matter.

**G.)    Comment on Pleadings and Discovery**

Plaintiff has just requested 2 additional hours of the Court to engender responses in this memorandum to two belated motions in limine responded to within days by the Court – before plaintiff could even respond, and was refused. Therefore plaintiff will respectfully truncate this memorandum and respond through other mechanisms elsewhere to utilize the services of Lisa A. Ritter the same expert the court accepted in the *Henderson* case.

2.)  The "Kroll Report". The Court has refused plaintiff the use of the Kroll Report holding that the defendants, who ordered the report and participated in its composition, were not made aware of it during discovery. The Court's acceptance of defendants claim that the report was not produced

until February 7, 2005 is in error. The report was lodged with the Supreme Court of the United States in March 2004. Counsel personally discussed it with Mr. Knorr of the AG's office after he spoken to Ms. Yerger about it. And duly served upon the defendants by counsel. Defendants are and have been fully aware of the Kroll report and its relationship to this case before the U.S. Supreme Court remanded it.

Plaintiff does not believe a jury should be given a false impression just because an organization defendants' make an admission after the fact but before trial.

1.) Expert witness. The Court has granted plaintiff the opportunity to call an expert witness. Last, the Court makes reference to plaintiff's status report, in today's order, where plaintiff mentions the need for more discovery etc. It is time that plaintiff did not make a formal notice but does not believe she had to. The issues were before the Court and they were plainly and honestly put. The BPR document should have been produced as original disclosures. Counsel was consistently told that there was no BPR report which he learned of through rumor. This is evident from reading, the end of the Baker deposition counsel believes.

Further the BPR documents and a number of defendants' heresay telephone statements will shortly be the subject of motions in limine by plaintiff. To conclude plaintiff will also seek this Courts recusal.

## H.)     Summary of Legal Authorities

Plaintiff concurs in defendants' theory of legal liability based upon the law prohibiting the creation or maintenance of a hostile work environment as per part (1) of Part (H) of defendants' pre trial memorandum.

Plaintiff also agree that as per the Supreme Courts decision in this case that plaintiff must demonstrate a constructive discharge. Plaintiff also understands as per *PSP v. Suders*, 124 S.Ct. 2342, 159 L.Ed. 2d 204 (2004). This is why the Kroll Report, which was lodged with the Supreme Court of the United States prior to oral argument (and which was well known to defendants' but was nonetheless served on them by plaintiff) is so important since in plaintiff's view it may well be dispositive of the issue of an affirmative defense and whether Suders took advantage of one (was there one?) which is the very basis the Court erroneously granted summary judgment.

## I.)     Stipulations

The plaintiff would stipulate to the authenticity of her exhibits and that copies may be accepted in lieu of originals.

**J.)    Estimated Length of Trial**

The parties agree that the case will take approximately 6 to 7 days.

**K.)    Other Matters Pertinent to the Case**

Other pertinent matters have been referred to above to the best of plaintiff's ability. Of further note, the Kroll Report could not have been produced before the end of discovery since it hadn't been procured then. If a defendant does a pertinent report after the close of discovery which robs them of the affirmative defense as here the plaintiff should not have to adhere to a presentation of facts.

**L.)    List of Exhibits**

Please see attached list.

RESPECTFULLY SUBMITTED,

**BAILEY & OSTROWSKI**

By:        s/Don Bailey, Esquire
4311 N. 6th Street
Harrisburg, PA  17110
(717) 221-9500

<u>**CERTIFICATE OF SERVICE**</u>

I, Don Bailey do hereby certify that on February 14, 2005

I served a true and correct copy of the following ***PLAINTIFF'S PRE-***

***TRIAL MEMORANDUM*** to the attorney listed below by Electronic Means:


Sarah Yerger, Esquire
Senior Deputy Attorney General
Civil Litigation Section
15th Floor, Strawberry Square
Harrisburg, Pa 17108

Samuel C. Stretton, Esquire
601 South High Street
West Chester, PA  19381


RESPECTFULLY SUBMITTED,

**BAILEY & OSTROWSKI**


By:       <u>s/Don Bailey, Esquire</u>
          4311 N. 6th Street
          Harrisburg, PA  17110
          (717) 221-9500