# REPORT OF THE INDEPENDENT MONITOR OF THE PENNSYLVANIA STATE POLICE

## THIRD QUARTERLY REPORT FOR THE PERIOD ENDING JULY 31, 2004

## ISSUED SEPTEMBER 27, 2004

Office of the Independent Monitor
of the Pennsylvania State Police

Exhibit "B"



**Current Assessment of Compliance**

In its compliance reviews for the third quarter, the Monitor found no evidence of any violations of the OIG's recommendation against a member's "tipping off" the subject of a sexual harassment and/or sexual misconduct investigation that he or she was the subject of such an investigation. As to the Monitor's recommendation that the PSP issue a regulation which more explicitly prohibits such "tip offs," the current drafts of the revised AR 4-25, the revised FR 1-2, and the revised FR 1.18, include language which appears to satisfy the Monitor's recommendation. However, this language is not expected to become finalized until the fourth quarter. The Monitor will wait until then to include the final language in the next Report.

Based on the foregoing, once the draft revisions of AR 4-25, FR 1-2, and FR 1.18 become finalized and issued, the Monitor expects that the PSP will have complied with the recommendations of the OIG and of the Monitor on this point. At this time, the PSP has not complied with these recommendations.

## D. COMPLAINT VERIFICATION

The OIG Report (p. 20) recommended that the PSP should follow-up on all complaints of sexual harassment and/or sexual misconduct, even if the complainant had not submitted a written Complaint Verification Form. The OIG also recommended that the letter accompanying the Complaint Verification should include a statement that assures complainants that the PSP is interested in aggressively pursuing any misconduct by PSP personnel. In its Second Quarterly Report, the Monitor observed that, before the OIG submitted its Report, it had been the policy of the PSP not to follow-up on complaints without a Complaint Verification Form since the PSP would treat such a complaint as having been withdrawn. The PSP, however, would follow-up, even without a Complaint Verification Form, in cases of criminal activity, but not in cases of non-criminal activity. On September 26, 2003, the PSP issued an oral directive consistent with the OIG's recommendation.

Based on its review of Bureau Special Order 2004-01, issued on March 10, 2004, the Monitor found that the PSP had formalized the oral directive cited above (using the same language).[16] The Monitor had reviewed the 18 files containing complaints of sexual harassment and/or sexual misconduct which were open during the first and second quarters and found no instances where either of the new PSP policies concerning Complaint Verification and face-to-face interviews (as described in the next section) had been violated.[17]

---

[16] Bureau Special Order 2004-01 states, in part:

> No complaint alleging sexual misconduct or sexual harassment shall be deemed withdrawn on the basis of a complainant failing to return a Complaint Verification Form. In such cases, personal contact with the complainant shall be pursued by the IAD.

[17] The Monitor's review of the BIPS files included: (1) an examination of all the contents of each file, including reports of witness interviews; (2) interviewing selected witnesses in several of the files; and (3) listening to selected audiotapes of witness interviews in several of the files.

**Current Assessment of Compliance**

The Monitor determined that, during the third quarter, there were no instances where the new policy regarding Complaint Verifications had been violated. In its compliance reviews for the third quarter, the Monitor examined the nine open files and the 13 files that were closed during the third quarter.[18]

Based on the foregoing, the PSP has complied with the OIG's recommendations on this point.

## E. FACE-TO-FACE INTERVIEWS

The OIG Report (p. 20) recommended that the PSP establish a policy to pursue face-to-face interviews with complainants in all cases, even if the complainant fails to submit and sign a Complaint Verification Form. The PSP's initial response to the OIG's recommendation was that a face-to-face meeting would be pursued, where the complainant had not filed a Complaint Verification Form, but only in cases involving criminal allegations. This was the same procedure previously followed in determining whether or not a complaint would be considered withdrawn, as discussed at Section I.D. After issuing an oral directive, on September 26, 2003, consistent with the OIG's recommendations, the PSP formalized this new policy in Bureau Special Order 2004-01, which went into effect on March 10, 2004.[19] Based on our compliance reviews during the first and second quarters, as described in the Second Quarterly Report, the Monitor found that, in those instances where there was no Complaint Verification, this new policy and this Order were adhered to by the PSP.

**Current Assessment of Compliance**

During its compliance reviews for the third quarter, the Monitor determined that the requirement of a face-to-face interview of all complainants, whether or not a Complaint Verification had been filed, was being followed by the PSP. Moreover, the Monitor determined that all such interviews were being recorded, both in the form of the investigator's written summary of the interview and by means of an audiotape recording.

Based on the foregoing, the PSP has complied with the OIG's recommendations on this point.

---

[18] During the third quarter, 13 files were closed on the merits - because the PSP's investigation was completed and adjudicated, and it was determined that the allegations were "sustained," "not-sustained," "unfounded," or "withdrawn." Also during the third quarter, ten files were reclassified because they involved the misuse of the PSP's Intranet system, referred to as the Enterprise Network, either for sexually explicit images or sexually explicit stories/jokes, where there were no intended victims.

[19] See footnote 16.