IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NANCY DREW SUDERS,** | **CIVIL NO. 1:CV-00-1655** |
| Plaintiff | |
| v. | |
| **THE PENNSYLVANIA STATE POLICE,** | |
| Defendant | |

## MEMORANDUM AND ORDER

Before the court is "Plaintiff's Motion Respectfully Requesting the Honorable Sylvia Rambo to Reconsider Her Statement of Law as to the Points that Have to Be Proven, Which She Made During the Pre-Trial Conference" (Doc. 67). In the motion, Plaintiff asserts that the court may have misinterpreted the Supreme Court's decision in *Pa. State Police v. Suders*, 124 S. Ct. 2342 (2004) regarding whether Plaintiff is required to prove that a supervisor's official act precipitated her constructive discharge as part of the revised hostile environment constructive discharge analysis. Plaintiff contends that she need not prove any official act, but rather is only required to prove constructive discharge. In other words, Plaintiff argues that once constructive discharge has been demonstrated, Defendant has the opportunity to present the *Ellerth/Faragher* affirmative defense. The court will address this argument below.

The Supreme Court's essential holding in *Suders* was that "an employer does not have recourse to the *Ellerth/Faragher* affirmative defense when a ***supervisor's official act precipitates the constructive discharge***; absent such a 'tangible employment action,' however, the defense is available to the employer

whose supervisors are charged with harassment." *Suders*, 124 S. Ct. at 2351 (emphasis added).  In so deciding, the Supreme Court applied the principles established for non-constructive discharge hostile environment claims in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. Boca Raton*, 524 U.S. 775 (1998) to hostile environment cases involving constructive discharge.  *Id*. at 2347.  The *Ellerth/Faragher* framework divided hostile work environment claims into two categories: "(1) harassment that 'culminates in a tangible employment action,' for which employers are strictly liable . . . and (2) harassment that takes place in the absence of a tangible employment action, to which employers may assert an affirmative defense."  *Id*. at 2352 (internal citations omitted).  The key to the *Ellerth/Faragher* framework is the existence of a tangible employment action because these actions " 'fall within the special province of the supervisor,' who 'has been empowered by the company as . . . [an] agent to make economic decisions affecting other employees under his or her control.' "  *Id*. at 2353 (quoting *Ellerth*, 524 U.S. at 762).  In applying these principles to the hostile environment constructive discharge context, the Supreme Court concluded that "when an official act does not underlie the constructive discharge, the *Ellerth* and *Faragher* analysis . . . calls for extension of the affirmative defense to the employer."  *Suders*, 124 S. Ct. at 2355.

In reaching this conclusion, the Supreme Court explained how the concept of a tangible employment action plays out in a hostile environment constructive discharge context as follows:

> Like the harassment considered in our pathmarking decisions, harassment so intolerable as to cause a resignation may be effected through co-worker conduct, unofficial supervisory conduct, or official company acts.

> Unlike an actual termination, which is *always* effected through an official act of the company, a constructive discharge need not be. A constructive discharge involves both an employee's decision to leave and precipitating conduct: The former involves no official action; the latter, like a harassment claim without any constructive discharge assertion, ***may or may not involve official action***.

*Id*. (emphasis added). Thus, the salient issue in the hostile environment constructive discharge context is whether official conduct precipitated the constructive discharge. As the Supreme Court instructed, "[a]bsent 'an official act of the enterprise' . . . as the last straw, the employer would ordinarily have no particular reason to suspect that a resignation is not the typical kind daily occurring in the work force." *Id*. (internal citation omitted). In short, the employee in a hostile environment constructive discharge case must demonstrate that an official act "underlies" the constructive discharge in order to hold the employer strictly liable.[1] *Id*. If an official act exists, then the employer does not have the opportunity to present an affirmative defense; if no official act exists, then the affirmative defense is available to the employer.[2]

       Plaintiff's view of the Supreme Court's decision is that the employee does not have to prove an official act precipitated the constructive discharge and that merely showing a constructive discharge is enough to keep the case before a jury, albeit subject to the employer's affirmative defense. This view is technically correct. An employee is not *required* to prove official conduct; however, if the employee

---

[1] One federal district court succinctly stated these requirements as follows: "Constructive discharge can qualify as a tangible employment action, if the plaintiff can prove: 1) the elements of construtive discharge, and 2) that an 'official act' of the employer underlies the constructive discharge." *See Presley v. Pepperidge Farm, Inc.*, Civil No. 3:02CV2157, 2005 U.S. Dist. LEXIS 1695, at *38 to *39 (D. Conn. Feb. 8, 2005).

[2] Plaintiff argues that the court misinterpreted this formulation by stating that if an official act is not shown, then the case would be dismissed. Plaintiff misconstrues the court's interpretation. If an official act is not demonstrated, the case remains before the jury, but the defendant can then resort to the affirmative defense.

meets the burden of proving an official act, the employer is held strictly liable. To the extent Plaintiff suggests that proof of an official act is not part of the analysis at all, Plaintiff is in error. Failure to prove an official act functions as the "gateway" through which the employer may elicit the affirmative defense.

There are two other points the court would like to further clarify, which are the points the court intended to address at the pretrial conference. First, a constructive discharge is not automatically the equivalent of an official act. This point should be clear from the fact that the Supreme Court vacated the Third Circuit's holding that " 'a constructive discharge, when proved, constitutes a tangible employment action.' " *Id*. (quoting *Suders v. Easton*, 325 F.3d 432, 447 (3d Cir. 2003)). Second, a supervisor's mere involvement in the harassing conduct does not automatically qualify as an official act. *Suders*, 124 S. Ct. at 2355. As the Supreme Court explained,

> We acknowledge[] that a supervisor's "power and authority invests his or her harassing conduct with a particular threatening character, and in this sense, a supervisor is always aided by the agency relation." But we also recognize[] that "there are acts of harassment a supervisor might commit which might be the same acts a coemployee would commit, and there may be some circumstances where the supervisor's status [would] mak[e] little difference."

*Id*. at 2353 (quoting *Ellerth*, 524 U.S. at 763) (internal citations omitted). In fact, the Supreme Court provided contrasting examples of "how the 'official act' (or 'tangible employment action') criterion should play out when constructive discharge is alleged." *Suders*, 124 S. Ct. at 2356. In one case, the supervisor's conduct, which included repeated sexual comments and an alleged sexual assault, involved no official action such as " 'an extremely dangerous job assignment.' " *Id*. (quoting *Reed v.*

4

*MBNA Mktg. Sys., Inc.*, 333 F.3d 27, 33 (1st Cir. 2003)).  Because the supervisor's conduct did not involve the exercise of company authority, the affirmative defense was available to the employer to defeat vicarious liability.  *Id*.  In the other case, the harassing supervisor transferred the employee to an undesirable position; therefore, the employer was precluded from asserting the affirmative defense.  *Id*. (citing *Robinson v. Sappington*, 351 F.3d 317 (7th Cir. 2003)).  These cases "mark the path constructive discharge claims based on harassing conduct must follow."  *Suders*, 124 S. Ct. at 2356.[3]

In accordance with the foregoing, **IT IS HEREBY ORDERED THAT** "Plaintiff's Motion Respectfully Requesting the Honorable Sylvia Rambo to Reconsider Her Statement of Law as to the Points that Have to Be Proven, Which She Made During the Pre-Trial Conference" (Doc. 67) is **DENIED**.

                                                             s/Sylvia H. Rambo
                                                           Sylvia H. Rambo
                                                           United States District Judge

Dated: February 24, 2005.

---

[3] In applying the "official act" principles to the captioned matter, the Supreme Court noted that "[a]lthough most of the discriminatory behavior Suders alleged involved unofficial conduct, the events surrounding her computer-skills exams . . . were less obviously unofficial."  *Suders*, 124 S. Ct. at 2357 n.11.