IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NANCY DREW SUDERS,** : | **CIVIL NO. 1:CV-00-1655** |
|         **Plaintiff** : | |
| : | |
|     **v.** : | |
| : | |
| **THE PENNSYLVANIA** : | |
| **STATE POLICE,** : | |
| : | |
|         **Defendant** : | |

**MEMORANDUM AND ORDER**

The background of this memorandum and order is as follows. On February 18, 2005, Plaintiff file a "Motion to Admit in Her Case in Chief, or in the Alternative, in Rebuttal, the Kroll Report, and the Office of Inspector General's Report." (*See* Doc. 69.) In a memorandum and order dated February 24, 2005, the court denied Plaintiff's motion with respect to the Kroll Report and deferred ruling on the admissibility of pages 63 to 84 of the Inspector General's Report (the "IG Report"). In so deciding, the court requested Plaintiff "to more specifically identify the portions of the pages she proposes to use at trial and the relevance of those portions." (Feb. 24, 2005 Mem. and Order, Doc. 73 at 3.)

On February 28, 2005, Plaintiff submitted a "Designation of Pages and Purpose in the Inspector General's Report," seeking the admission of pages 63 to 69, 75 to 77, and 79 to 82. (Doc. 77.) That same date, Defendant filed a motion for reconsideration of the court's February 24, 2005 memorandum and order. For the reasons set forth below, the court finds that, upon further examination of the portions of the IG Report sought to be admitted, the pages designated by Plaintiff are either not relevant to the instant matter or inadmissible under Federal Rule of Evidence 403.

Thus, the court will deny Plaintiff's motion to admit portions of the IG Report. Accordingly, Defendant's motion for reconsideration will be denied as moot.

The first pages Plaintiff seeks to admit are pages 63 to 64. This portion of the IG Report describes how the Pennsylvania State Police's ("PSP") administrative regulation that requires complainants to place sexual harassment allegations in writing contravenes the Commonwealth's Management Directive 505.30, which states that "sexual harassment complaints do not have to be in writing before an investigation is initiated." (Doc. 69, Ex. A at 63.) At first blush, this portion of the IG Report is highly relevant to the instant matter because Plaintiff did not issue a written complaint to the PSP. Further, one of the issues at trial may be whether Defendant had "installed a readily accessible and effective policy for reporting and resolving complaints of sexual harassment." *Pa. State Police v. Suders*, 124 S. Ct. 2342, 2347 (2004). Defendant's compliance with the policies of the Commonwealth would certainly be one standard against which the effectiveness of Defendant's sexual harassment policy could be weighed. However, upon closer inspection, pages 63 to 64 do not indicate when Management Directive 505.30 was enacted. In fact, the court perused the IG Report and was unable to determine whether Management Directive 505.30 was in place when the alleged events of the instant action occurred. Absent some indication that Management Directive 505.30 was the same in 1998 as it was when the IG Report was issued, it would be improper to hold Defendant to a standard that may not have been in place. Thus, the court will not allow the admission of pages 63 to 64 of the IG Report.

Plaintiff next seeks to admit pages 64 to 65. For similar reasons as above, the court will preclude these pages of the report. Pages 64 to 65 describe

how the PSP's administrative regulations do not provide its Equal Opportunity Officer with the same amount of authorization to investigate allegations of sexual harassment as provided for in the Commonwealth's Executive Order 2003-10 and Management Directive 505.30.  Again, the court would be inclined to permit this portion of the report because it goes to the effectiveness of the PSP's sexual harassment policy.  However, there is no indication that Executive Order 2003-10 or Management Directive 505.30 were in place at the time of the alleged events in this case.  It would be prejudicial to Defendant to suggest to the jury that its sexual harassment policy in 1998 was ineffective because it did not comply with standards that may have been enacted after the fact.  Thus, the court will rule these pages inadmissible.

   Plaintiff next seeks the admission of page 66.  This portion of the report explains how the PSP's Equal Opportunity Officer relies on the Bureau of Professional Responsibility (the "Bureau") to investigate most allegations of sexual harassment and how the Bureau "lacks specific training" to investigate these kinds of claims.  (Doc. 69, Ex. A at 66.)  Whether the Bureau has "specific training" in sexual harassment investigations is not entirely relevant to the issue of whether the PSP's sexual harassment policy was effective.  Even though the Bureau may not have been the ideal agency to deal with the PSP's sexual harassment allegations, Plaintiff still could have possibly obtained an effective resolution of her complaints.  Thus, the court concludes that the probative value of this portion of the IG Report is outweighed by the risk of jury confusion and will preclude the admission of page 66.

   Plaintiff also seeks the admission of pages 66 to 67.  These pages refer to the PSP's failure to make substantive sexual harassment education an ongoing

effort throughout the employment of its officers, especially in light of Executive Order 2002-4 and Management Directive 505.30, which mandate the education of Commonwealth employees on these issues. The court will exclude pages 66 to 68 for two reasons. First, as stated above, it would be improper to hold the PSP to standards that may or may not have been in place when the events in question occurred. Second, the amount of education the PSP officers received on sexual harassment issues is not relevant to the effectiveness of the PSP's sexual harassment policy. Nothing in pages 66 to 68 suggests that the PSP's *investigators* of sexual harassment claims were uneducated on issues of sexual harassment. The risk of confusing the jury is too high to allow the admission of these pages.

Plaintiff next seeks the admission of pages 68 to 69. These pages discuss how the Equal Opportunity Officer's involvement in sexual harassment is limited because of the *current* staff size. At the time the IG Report was issued, the Equal Opportunity Officer had only one full-time clerk typist assigned as an assistant. Thus, the Equal Opportunity Officer was forced to utilize a liaison stationed in every division who was not within the Equal Opportunity Officer's chain of command. The lack of staff under the Equal Opportunity Officer would be relevant to the general effectiveness of the PSP's sexual harassment policy, but pages 68 to 69 only refer to the staff size as it existed at the time of the report. There is no way to discern from the report itself what the staff size was in 1998 or whether the liaison system was utilized at that time. To allow these pages of the IG Report into evidence at trial would run the risk of jury confusion and would be prejudicial to Defendant.

Next, Plaintiff seeks the admission of pages 75 to 77 of the IG Report. These pages discuss a perceived attitudinal problem within the PSP with respect to

sexual harassment.  This discussion is simply not relevant to the instant matter.  This evidence does not go to the weakness of the PSP's sexual harassment policy, but rather to general problems regarding sexual harassment that allegedly existed throughout the PSP.  Further, the assertions made on pages 75 to 77 appear to be the subjective conclusions of the author of the IG Report.  In short, this portion of the IG Report has very little probative value to the instant action, and what probative value exists is substantially outweighed by the danger of unfair prejudice to Defendant.  Pages 75 to 77 will be excluded from trial.

  Finally, Plaintiff seeks the admission of pages 79 to 82.  These pages contain roughly 25 recommendations to the PSP for ways to improve its sexual harassment and misconduct practices.  The court will preclude these recommendations from being introduced at trial because the risk of jury confusion as to the appropriate weight to be given the recommendations is high.  In reviewing the list of recommendations, the immediate inference is that these were all deficiencies in the PSP's sexual harassment policy.  However, the fact that these were recommendations indicates that not all of the recommendations would need to be implemented to meet the minimum requirements of an effective sexual harassment policy.  Additionally, the recommendations are akin to subsequent remedial measures and should be precluded for similar reasons.  In short, the court will not allow pages 79 to 82 of the IG Report to be introduced at trial.

  In sum, the court will exclude all portions of the IG Report at trial.  In deferring a ruling on Plaintiff's previous motion to admit portions of the IG Report, the court noted that it would "permit admission of only those portions [of the report] that are relevant."  (Feb. 24, 2005 Mem. and Order, Doc. 73 at 3.)  While some of the

pages identified by Plaintiff for admission seem at first glance to be relevant, upon further examination, the court has concluded that all of the pages designated are either irrelevant or excludable under Federal Rule of Evidence 403.  Because the court has denied Plaintiff's motion to admit portions of the IG Report, Defendant's motion for reconsideration of the court's February 24, 2005 memorandum and order will be denied as moot.

In accordance with the foregoing, **IT IS HEREBY ORDERED THAT**:

1) Plaintiff's motion to admit portions of the IG Report (Doc. 69) is **DENIED**.

2) Plaintiff will be precluded from introducing any portion of the IG Report at trial.

3) Defendant's motion for reconsideration of the court's February 24, 2005 memorandum and order (Doc. 75) is denied as **MOOT**.

                                                s/Sylvia H. Rambo
                                                Sylvia H. Rambo
                                                United States District Judge

Dated:  March 3, 2005.