IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NANCY DREW SUDERS** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:CV-00-1655** |
| v. | : | |
| | : | **(Judge Rambo)** |
| **PENNSYLVANIA STATE POLICE,** | : | |
| **Defendant** | : | **(Electronically Filed)** |

**DEFENDANT'S TRIAL MEMORANDUM**

**I.   Introduction**

This is a civil rights action was brought under Title VII of the Civil Rights Act of 1964, as amended. Plaintiff Nancy Suders is a former employee of the defendant, Pennsylvania State Police (PSP). Suders began working on March 23, 1998 as a Police Communications Officer (PCO). She resigned from her position with the PSP on August 20, 1998. The sole remaining claim in this case is that Suders has been subjected to a sexually hostile work environment by the PSP under Title VII.

Suders claims that she was the victim of sexual harassment at the PSP's McConnellsburg barracks involving superior officers and others. On her last day of employment, August 20, 1998, plaintiff had gotten into a coworker's drawer in the female locker room and her hands were blue from theft detection powder which had been placed in the drawer to discover who

had taken papers from the drawer. After being questioned about the blue on her hands, plaintiff told the station commander she was resigning and handed him a resignation letter that she had been carrying with her. Suders contends that her resignation was in fact a constructive discharge, the result of a sexually hostile work environment. She claims that her resignation was the result of an ongoing pattern of sexual harassment directed against her which culminated with her "resignation" on August 20, 1998.

The PSP contends that Suders was not sexually harassed and, even if she was, she was not harassed in a legally cognizable sense. If Suders was the subject of any harassment, none of it was attributable to her gender. In addition, the PSP contends that Suders voluntarily quit her employment because she had been caught in another employee's personal drawer. It further maintains that Suders cannot point to an official act of the PSP which would constitute a tangible employment action under the Supreme Court's earlier decision in this case. Accordingly, the PSP believes it is entitled to the *Ellerth/Faragher* affirmative defense since there was no tangible employment action which was the proximate cause of her resignation and the PSP had a readily accessible policy for reporting complaints to which plaintiff did not avail herself. In sum, the PSP maintains that it is not liable to Suders.

## II. <u>**Undisputed Facts**</u>

Nancy Suders began employment with the Pennsylvania State Police on March 23, 1998 as a police communications operator (PCO) at the PSP's McConnellsburg barracks. The station commander and corporals at the McConnellsburg barracks all supervised Nancy Suders. Ms Suders submitted a resignation letter to the station commander on August 20, 1998. Ms. Suders has not returned to the employ of the PSP since August 20, 1998.

## III. <u>**Plaintiff's Case**</u>

It is anticipated that Suders will testify regarding the allegedly sexually hostile work environment at the McConnellsburg Barracks. Her testimony will focus on the alleged improper conduct of the previously dismissed individual defendants: Eric Easton, the station commander; William Baker, a corporal; and Eric Prendergast, a corporal. Suders will further testify regarding the events of the night of August 20, 1998 when she submitted her resignation letter. Suders will probably also testify regarding her alleged attempts to file a complaint with Virginia Smith Elliot, the EEO Officer for the PSP, a few days before she resigned.

Suders has listed approximately 30 other witnesses in her pre-trial memorandum. Of these, the defendant believes that the testimony of some

of these witnesses is irrelevant based on this Court's prior rulings regarding the admissibility of the Kroll Report and the Inspector General's Report. One of Suders' witnesses is an economic expert who will testify regarding her economic damages resulting from lost wages and benefits. It is anticipated that the remaining witnesses will be called to substantiate her claims of sexual harassment and to refute the PSP's claims that it had an effective sexual harassment policy in place.

### IV.   Defendant's Case

The PSP intends to establish that Suders was a political patronage employee who was either unwilling or unable to properly perform the duties of a Police Communications Operator. It will present the testimony of Eric Easton, the station commander, as well as other supervisors, troopers and PCO's stationed at McConnellsburg in 1998 to establish that Suders was given ample training and support in her position, but failed to adequately perform her job.

Virginia Smith Elliot, the EEO Officer for the PSP at the time, will also testify regarding the PSP's sexual harassment policy and will specifically refute Suders' claim that she was prevented or unable to file a complaint with the PSP. She will also testify that although Suders called to complain about age discrimination and retaliation based on political

affiliation, she never said anything to her about being subjected to a sexually hostile work environment or being discriminated against based on sex.

Captain Holmberg, the Troop G Commander; Helen Lipko, the Troop G Administrator; and Jina Wingard, a Police Communications Operator Supervisor, will also testify regarding the hiring, training, job duties, and supervision of PCO's.  They will also provide the jury with information regarding the PSP's sexual harassment policy and how that information is made available to PCOs by the PSP.

The PSP will also present testimony from Easton, Prendergast, Baker and other PSP employees stationed at McConnellsburg to refute Suders' claims that she was sexually harassed.  This testimony will establish that most of her claims are either untrue, have not been placed in a proper context, and/or have some other explanation unrelated to sexual harassment. Testimony from Jody Lancaster, the senior PCO at McConnellsburg, Sgt. Easton and Corporal Sechoka will be presented to refute Suders' allegations regarding the evening of August 20, 1998 and to establish that Suders was engaged in improper conduct which warranted investigation and possible disciplinary action.  The PSP will also establish, primarily through the testimony of Lancaster, that Suders was given multiple opportunities to pass the "CLEAN" computer test but failed to do so.  It will further show that

there is no evidence that the test was somehow "fixed" beyond Suders' own fanciful speculations.

The PSP also reserves the right to call any of the witnesses listed in Suders' pre-trial memorandum.

### V. Summary of Legal Issues Involved and Legal Authorities Relied Upon

#### A. Whether Suders was subjected to a sexually hostile work environment by the PSP?

In order to prevail on her claim that she was subjected to a sexually hostile work environment, Suders must establish that she was subjected to intentional discrimination due to her sex, the discrimination was "pervasive" or "severe," she was detrimentally affected by the discrimination, a reasonable person of the same sex, in the same position, would have been similarly affected, and that the PSP is responsible for the acts complained of. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993); *Kunin v. Sears Roebuck and Co.*, 175 F.3d 289, 293 (3d Cir.), *cert. denied*, 528 U.S. 964 (1999).

#### B. Whether Suders' resignation from the PSP constituted a constructive discharge?

In order to establish that she was constructively discharged as a result of a sexually hostile work environment, Suders must establish that the working conditions were "so intolerable that a reasonable person would have

felt compelled to resign." *Suders*, 124 S. Ct. at 2354. Unless the conditions are beyond "ordinary discrimination, a complaining employee is expected to remain on the job while seeking redress." *Id.* (quoting *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1015 (7th Cir. 1997)).

### C. Whether Suders' resignation was the result of an "official act" of the PSP?

If the jury determines that Suders resignation was in fact a constructive discharge, the PSP is still entitled to the *Ellerth/Faragher* affirmative defense unless Suders can show that her resignation was caused by an official act of the PSP. The Supreme Court stated in its earlier decision that "unlike an actual termination, which is *always* effected through an official act of the company, a constructive discharge need not be." *Suders*, 124 S. Ct. at 2355.

A constructive discharge may be "effected through co-worker conduct, unofficial supervisory conduct, or official company acts." *Id.* The PSP believes that while Suders may be able to present sufficient evidence to establish that her resignation was caused by co-worker conduct or unofficial supervisory conduct, she cannot present sufficient evidence to establish that her resignation was the result of an "official act" of the PSP. In other words, although Suders is expected to testify regarding acts of sexual harassment by

7

her supervisors, none of this conduct would be the kind which could only be done by a supervisor acting within his official capacity.

For example, the "arrest" and "questioning" of Suders on the night of her resignation is something which all Pennsylvania State Troopers have the authority to perform regardless of whether they hold a supervisory position. Accordingly, the acts which Suders apparently maintains were the direct cause of her resignation were not official company acts of the state police.

Unless Suders can point to an official act which resulted in her resignation and present evidence to substantiate this claim, the PSP believes that it is entitled to the *Ellerth/Faragher* affirmative defense and that the jury should be instructed to consider the defense.

### D. Whether Suders is entitled to back pay and front pay?

If the jury determines that the PSP is not entitled to the *Ellerth/Faragher* affirmative defense and that Suders was subjected to a sexually hostile work environment, it could nonetheless still determine that she was not justified in resigning. In other words, the jury could determine that while constituting a violation of Title VII, the hostile work environment was not so terrible to warrant her resignation. If the jury so found, Suders would not be entitled to back pay or front pay, but only compensatory

damages for pain and suffering associated with her treatment on the job. *Suders*, 124 S. Ct. at 2351-54.

In addition, even if Suders is found to be entitled to back pay and/or front pay, her award should be reduced since she failed to mitigate damages by seeking comparable employment. *See* 42 U.S.C. §1981a; *3C Federal Jury Practice and Instructions*, §171.95 (5th Ed.)

### E. Whether Suders may present evidence regarding the Inspector General's Report and the Kroll Report.

The Court, in its Memorandum and Order dated February 24, 2005, denied Suders request to use the Kroll Report. Subsequently, the Court further ruled that Suders could not use the Inspector General's Report either. Based on these opinions, Suders is barred from presenting this evidence. Furthermore, the PSP is not planning on calling any witnesses or presenting any other evidence which would rebut this evidence. In light of this ruling and the arguments previously presented by the PSP on this issue, the PSP would be severely prejudiced if any of this evidence were allowed to be presented to the jury at trial.

### F. Whether Plaintiff's Exhibits 3 and 35 or Defendant's Exhibits 20, 21, 22, 24, 25, 31, 33, and 34 are admissible?

The Court, in its Memorandum and Order following the pre-trial conference, dated February 18, 2005, held that a decision on the

admissibility of the above-listed exhibits would be deferred until trial. Under the terms of the Court's order, neither party shall use any of these exhibits until it obtains permission from the Court at sidebar.

> G. **Whether the PSP may amend its exhibit list to add an additional exhibit which was not discovered until after the pre-trial conference?**

On or around February 28, 2005, Lt. Col. Rick Brown contacted the present EEO Director for the PSP, Lieutenant M.L. Henry III, to inquire about the existence of a written record detailing any contact between Nancy Suders and the EEO Office in 1998. Henry subsequently found a written log noting a conversation between Suders and Virginia Smith Elliot, the Director of the EEO Office for the PSP in 1998. (*See* Defendant's Exhibit 44, Attachment C) The log entry was for August 19, 1998: the day before Suders resigned her position. This log was kept separately and was not attached to any documents previously requested by the plaintiff or given to counsel from the Attorney General's Office by the PSP. (*See* Declaration of Henry, Attachment D) Counsel for the PSP did not know about the existence of this document until after the pre-trial conference. Counsel for the PSP immediately notified opposing counsel of the existence of this document and of her intention to use the document in conjunction with the testimony of Virginia Smith Elliot.

The plaintiff did not make any discovery requests which would have lead to the disclosure of this document. Moreover, counsel for the PSP did not know of the existence of this log until March 2005 despite her previous attempts to uncover all documents in the possession of the PSP which might be relevant to this case.

The log is clearly relevant to the question of whether the PSP is entitled to the *Ellerth/Faragher* affirmative defense. Moreover, since Suders deposed Virginia Smith Elliot and was given the log last week as soon as it was discovered, she is not unduly prejudiced by its use. *See* Fed. R. Evid. 403.

### H. Whether Suders should be allowed to call Charles Skurkis and any other individuals not listed on their witness list?

Counsel for the PSP was informed on March 10, 2005 that Suders had attempted to subpoena Major Charles Skurkis, Director of the PSP's Bureau of Integrity and Professional Standards. However, this is the first time that the PSP has had notice that Suders intended to call Skurkis as a witness.[1]

---

[1] Counsel for the PSP has been informed that at least some of the witnesses subpoenaed by Suders have not been given the required witness fee. Suders' counsel has been informed that PSP employees subpoenaed by her are not required to appear to testify if the required witness fee is not also delivered to them. In addition, Major Skurkis was not personally served at his office, but the subpoena was left at another office of the PSP. Suders' counsel has been informed of this error and notified that any subpoenas of PSP personnel need to be served properly in accordance with the Federal Rules.

There is no reason why Suders could not have identified Skurkis as a witness previously and certainly no reason why its only notification came when it was informed that one of its employees had been served with a subpoena. Since Suders has failed to comply with the disclosure requirements under Fed. R. Civ. P. 26(a)(3)(A), the testimony of Major Skurkis and any other witnesses not identified prior to the pre-trial conference should be excluded.

## VI. Amended Exhibit List

Defendant is amending its exhibit list to include a log kept by Virginia Smith Elliot which was discovered after the pre-trial Conference. *See* discussion, *supra,* Section V.G. Defendant's Amended Exhibit List is attached. (*See* Attachment A)

## VII. Special Verdict Questions

Defendant's proposed special verdict questions are attached. (*See* Attachment B)

## VIII. Conclusion

The PSP believes that the evidence will show that Suders was not subjected to a sexually hostile work environment. It also believes that the evidence will not only show that the PSP had an effective sexual harassment policy, but that Suders failed to avail herself of that policy. In addition, the PSP maintains that Suders cannot establish that she was subject to a

constructive discharge and, even if she were, this was not the result of an official act by the PSP. Therefore, the PSP is entitled to the *Ellerth/Faragher* affirmative defense.

If the jury were to find that Suders were subjected to a sexually hostile work environment, the PSP still maintains that her damages would be limited. First, it believes that the evidence will show that she is not entitled to be compensated for lost wages since she voluntarily resigned her position and not because she was forced to resign by an intolerable sexually hostile work environment. Second, the PSP believes that even if she were entitled to front pay and back pay, her failure to mitigate her damages by looking for a comparable position would strictly limit her entitlement to such relief.

       **Respectfully submitted,**

       **THOMAS W. CORBETT, JR.**
       **Attorney General**

**BY:** **s/Sarah C. Yerger**
    **SARAH C. YERGER**
    **Senior Deputy Attorney General**
    **I.D. No. 70357**

    **s/Howard G. Hopkirk**
    **HOWARD G. HOPKIRK**
    **Senior Deputy Attorney General**
    **I.D. No.  74264**

    **SUSAN J. FORNEY**
    **Chief Deputy Attorney General**
    **Chief, Litigation Section**

**Office of Attorney General**
**Litigation Section**
**15th Fl., Strawberry Square**
**Harrisburg, PA  17120**
**(717) 705- 2503 - Direct**
**(717) 772-4526 - Fax**
**DATED:  March 11, 2005**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NANCY DREW SUDERS | : | |
|     Plaintiff | : | |
| | : | No. 1:CV-00-1655 |
| v. | : | |
| | : | (Judge Rambo) |
| ERIC D. EASTON, et al., | : | |
|     Defendants | : | (Electronically Filed) |

## CERTIFICATE OF SERVICE

    I, SARAH C. YERGER, Deputy Attorney General, hereby certify that I have this day served the foregoing Pretrial Memorandum via electronic filing to the following:

Donald Bailey, Esquire
4311 North 6th Street
Harrisburg, PA 17110

Samuel Stretton, Esquire
4311 North 6th Street
Harrisburg, PA 17110

Sheri Coover, Esquire
4311 North 6th Street
Harrisburg, PA 17110

                                           s/Sarah C. Yerger_____
                                           SARAH C. YERGER
                                           Senior Deputy Attorney General

DATE:  March 11, 2005