ORIGINAL

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NANCY DREW SUDERS, | : | |
| | : | |
| Plaintiff | : | No. 1: CV-00-1655 |
| | : | |
| v. | : | JUDGE RAMBO |
| | : | |
| ERIC EASTON, WILLIAM D. | : | |
| BAKER, ERIC B. PRENDERGAST, | : | |
| VIRGINIA SMITH ELLIOTT, | : | |
| AND THE PENNSYLVANIA | : | |
| STATE POLICE, | : | |
| Defendants | : | JURY TRIAL DEMANDED |

FILED
HARRISBURG, PA
MAR 14 2005
MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

**Plaintiffs Brief and Exhibits in Support of Her Motion for This Court to
Vacate and Reconsider Its Decision to Allow the Defendant PSP
The Right and Opportunity to Present an Affirmative Defense
(*Ellerth/Faragher*) in the Matter at Trial and to
Reinstate Plaintiffs Retaliation Claim under the
Opposition Clause of Title VII**

I.)   Background

When this case was initially before the court it was dismissed by this court summarily based upon this court's conclusion that Nancy Suders had unreasonably failed to take advantage of a purported Pennsylvania State Police (PSP) sexual harassment policy. More specifically this court held that Nancy Suders had failed to file a complaint about her travails in written form as directed by then affirmative-action officer Virginia Smith Elliott who admits to telling Suders to go find a particular complaint form. In the

1

interest of fairness Elliott contends Suders told her about age and other discrimination but didn't mention sex as the basis of her complaint. Regardless the trial court's decision was clearly reversed by the Third Circuit Court of Appeals on the issue of this court's failure to apply the appropriate standard of review to the facts. This court's error was strongly commented on by both the Third Circuit and by the United States Supreme Court. In fairness to this court, it was represented by the PSP, and they have continued to represent to this court and to plaintiff, that they had a viable (presumably this means the PSP policy including its complaint processing practices were lawful and in all other ways consistent with Title VII law and the practices and requirements of Pennsylvania law, regulation, and practices) sexual harassment policy in place at the time Nancy Suders was employed by them.

Plaintiff filed a substantively applicable OIG report which held that the PSP had not been in compliance with state law, but the court held that because the OIG report, and the Kroll report, did not specifically mention when the PSP was not in compliance, i.e. address whether or not they were in compliance with Pennsylvania law at the time Suders was employed by them, the court denied plaintiff the use of these reports either in their case in chief or in rebuttal. Notably, the court departed from the arguments set forth by the defendant PSP in its February 25, 2005 motion for reconsideration of

2

the court's earlier February 24, 2005 memorandum and order granting plaintiffs motion to admit portions of the IG report.

The court, in reversing itself, placed the burden of proving the PSP policy to have been improper, if at all, at the time of Suders' employment, on plaintiff's shoulders, holding the OIG report and the Kroll report findings were inadequate to address whether the PSP had an adequate antidiscrimination policy which the plaintiff failed to take reasonable advantage of on or about the relevant time of August, 1998. Consequently the court is permitting the PSP to present information and representations as to their sexual harassment policy on or about 1998 as if it were in compliance with federal and state law and practice in a context where the jury will be led to believe that Nancy Suders somehow didn't take advantage of the PSP policy. At no time has this court required the defendant PSP to demonstrate that its affirmative defense is based upon a lawful and proper policy requiring a written complaint as to the bringing of a sexual harassment complaint at the time Nancy Suders was employed since Elliott's telling Suders to get a form is admitted to.

Plaintiff believes this is reversible error in that there is substantial evidence as presented in this brief, that the PSP should be required to demonstrate that their policy, in 1998, of requiring a person complaining of

3

a supervisor's sexual harassment to do so in writing, to hunt for a copy of the policy and the office, and to go through the manuals, was not only out of compliance with federal law and Pennsylvania's state law, but with the practices and requirements of the executive branch of Pennsylvania government under which the PSP operated at the time and continues to operate today.

Of particular importance in this analysis are recently discovered documents (at least this is what the PSP claims) which indicate that on or about August 19, 1998 plaintiff's complaints were logged. In temporal proximity, plaintiff claims she was constructively discharged on August 23, 1998 (see the transcript of the pretrial conference, exhibit H. hereto, at page 22) which she presumably must demonstrate before defendants put on their affirmative defense. Of even greater importance and relevance is the testimony of Major Charles Skurkis who has spent his entire career in the Bureau of Professional Responsibility.

**II.)   Issues**

1.  Is the burden to demonstrate the right to present an *Ellerth/Faragher* affirmative defense on the plaintiff or on the defendant (movants) in this case?

Suggested answer, yes.

4

2. Has the plaintiff raised sufficient questions such that this court has a duty to require, as plaintiff requests, to order the defendant PSP to demonstrate?

a.) That the PSP had a "written complaint" process requirement in place at the time Nancy Suders call Virginia Smith Elliott for assistance (spring and summer of 1998) and,

b.) That Virginia Smith Elliott had no duty to follow up promptly on Suders oral complaints to her and, or, that she did so when she told Suders to go find a form to which he admits and,

c.) that Suders, as a matter of law, "unreasonably", failed to take advantage of the purported anti-sexual discrimination policy the PSP supposedly had in place and supposedly followed(already answered in the negative by the Third Circuit Court of Appeals and by the United States Supreme Court) when she was unable to find the form in question.

Suggested answer yes.

**III.)   Argument**

Plaintiff incorporates herein the exhibits attached hereto which are identified as follows:

Exhibit A.   Portions of the deposition of PSP Major Charles Skurkis (pages 33-40) that were taken on March 8, 2005 at 10:03 AM in the

5

law offices of Don Bailey Esq. in the case of *Ober V. Miller et al*, docketed at No. 4: CV-1669 in the United States District Court for the Middle District of Pennsylvania (Judge Conner).

Exhibit B. A two-page document indicating a claimed attempt that then Lt. John R. Brown of the PSP attempted to contact Nancy Suders on October 23, 1998. This document was provided to plaintiff a full three weeks after the parties Rule 16.3 conference.

Exhibit C. A copy of defendants "Declaration of Lt. M. L. Henry the III" with attachment. This document was provided to plaintiffs more than three weeks after the parties L.R. 16.3 conference.

Exhibit D. A copy of Executive Order 1993 - 1, from the Commonwealth of Pennsylvania's Governor's Office.

Exhibit E. A copy of a memorandum and order by the Honorable James McClure in the case of *Lidwell v University Park Nursing Care Center*, 116 F.Supp.2d 571(M.D. Pa. 2000).

Exhibit F. A copy of *Rodriguez V. City of Houston*, 250 F.Supp. 691 (S.D. Texas 2003).

Exhibit G. A copy of *Pyne V. Proccacci Bros. Sales Corp.*, 1998 WL 386118 (E.D.Pa. 1998).

6

Exhibit H. A copy of the pretrial transcript in the present case dated February 18, 2005.

Exhibit I. A copy of two pieces of correspondence from Sheriff Gordon Diehl who's interview is one of defendants' desired pieces of evidence.

Plaintiff argues that this court has erred in the following particulars and is creating a high and unnecessary likelihood for the plaintiff to have to appeal this matter by forcing plaintiff to expend time and money at trial for erroneous reasons. The court is erroneously allowing the defendants to assert an affirmative defense based upon their representation that they had a viable anti-discrimination policy in place when Nancy Suders was employed by the Pennsylvania State police in the spring and summer of 1998, and that they followed and employed that policy, and further that Nancy Suders failed to take advantage of, or utilize, that policy. Of necessity the defendants presentation of this defense, in plaintiff's opinion, will raise serious ethical and other questions of presenting false and misleading testimony.

The defendants argument and right to the affirmative defense should fail for the following reasons:

7

Exhibit A demonstrates that the Pennsylvania State Police anti-discrimination policy was not as represented by the PSP before this court and it was not PSP policy to require that a form be filled out and manuals be consulted at the time that Nancy Suders was employed by them. Major Skurkis has spent his entire career in the Bureau of Professional Responsibility. The PSP has never indicated incidentally that any of their complaint processing policies differentiate sex discrimination from age or "political" discrimination whatever that may be.

Exhibit B. demonstrates that Nancy Suders had already been constructively discharged(August 23, 1998) when Lt. Brown purportedly failed to get an interview with her on October 23, 1998(see page 1 of exhibit B.). Page 2 of exhibit B. at entry number six indicates a BPR investigation 10802A (which PSP counsel erroneously claims(obviously) is attorney work product, something on which this court is yet to rule as per admissibility) was supposedly opened on August 19, 1998 well before Nancy Suders filed her complaint. Further that entry appears to have something whited out but regardless mentions "age and political" as the reasons for the BPR. Under the heading "Disposition" the entry says complainant refused to be interviewed. The inference is obvious, although undated, the matter was closed out because Nancy Suders supposedly didn't talk to Mr. Brown. This

8

is particularly odd since by admission Brown never even tried to talk to Nancy Suders until more than two months later (October 23, 1998). And when was the BPR closed?

Exhibit C. demonstrates that the defendants clearly violated Rule 26 disclosure requirements. This failure to "see that the Rules are followed" is made more plain by the fact that the person PSP counsel claims was doing the attorney work product, namely Mr. Rick Brown, was the same person who directed him to look at the EEO office files. How could Brown's attempted interview have taken place two months after the BPR was opened and resulted in the matter being closed because Nancy Suders wasn't home at the time he called? This denotes more of an avoidance or cover up than it does an honest and thorough investigation. Brown admits in his report that he knew that Nancy worked at the Fulton County Sheriff's Office, which, by the way, is only a couple of miles down the road from the McConnellsburg barracks. She was transporting prisoners at the time according to his report. This hardly indicates any sincerity in the so-called PSP follow-up which ends there.

Exhibit D. is a copy of Governor Casey's Executive Order of 1993. It shows the importance of the state's anti-discrimination policy and it directs that all agencies are to follow certain "steps" when concerns arise.

Exhibit D1 is a copy of the case of *Homan v. Commonwealth Unemployment Compensation Board of Review*, 107 Pa. Cmwlth. 172, 527 A2d 1109(1987). There are innumerable cases which echo the *Homan* decision finding that a person complaining of sexual harassment was not required to complain about each and every incident of sexual harassment or to <u>make formal complaint</u> of sexual harassment in order to be able to establish that she took reasonable steps to alleviate the problem and remain in the workforce. How can the Pennsylvania State Police conclude that the law and policy pertaining to unemployment compensation claims could be different than the law pertaining to antidiscrimination claims?

Exhibit E., the *Lidwell* decision, a Middle District of Pennsylvania decision, also makes it plain(plaintiff Kathy C. Lidwell commenced her action on October 30, 1998 making it temporally apropos) that an informal notification of sexual harassment was sufficient under Title VII law to incur the employer's liability, see page 582.

Exhibit F., the *Rodriguez* case concisely and clearly stands for the proposition that an employer cannot, and should not, tell a sexual

harassment complainer, particularly where a supervisor is involved, to go find a form to fill out, consult the manual's, and send in a written complaint form.

Exhibit G., is a decision written by the late federal district judge, the Honorable Jay Waldman, in an Eastern District of Pennsylvania decision, that the "opposition clause" of Title VII law "protects an array of formal or informal complaints and protests about prohibited employment practices". Why would Nancy Suders' acknowledged complaints to Senator Jubileer and Governor Ridge about PSP misconduct be put in a special category apart from her complaints to her superiors, and particularly a designated person who was to receive complaints about sexual harassment ( Elliott) than the complaint about sexual harassment itself?

Exhibit I, are copies of two communications with Sheriff Gordon Diehl. Gordon Diehl was contacted by Mr. Brown <u>after</u> the beginning of the year 2000. Apparently the PSP is claiming that the attorney work product investigation which plaintiff is being denied the opportunity to see, and which has never been disclosed, stretches from August 19, 1998, well before Nancy Suders filed her complaint, and the year 2000 when Brown, who had to know (Easton worked in Diehl's office after he retired) that the Ms. Suders he was asking Sheriff Diehl about was not Nancy Suders

11

but rather was another Suders who, incidentally, is unrelated to Nancy. This is the sort of "attorney work product evidence" which the defendants only made known to plaintiffs at the Rule 16.3 conference on February 7, 2005. How many other discrepancies in irregularities are in this so-called evidence? Sheriff Diehl is from Bedford County and has never employed and has never even seen Nancy Suders. The representation by the PSP that this was some sort of pre-employment review or interview is totally false.

  This court should not allow this defendant to proceed on the clearly unjustified assumption that merely because the OIG report didn't indicate the chronology of PSP misconduct or errors in its complaint processing practices, that the PSP should be allowed to present an affirmative defense attempting to justify Virginia Smith Elliott's telling Nancy Suders to go fill out a form and consult PSP a regulations only to be followed a few days later by the so-called theft powder incident which forced her to leave. Furthermore, with the defendants unwittingly producing documentary evidence of the contemporaneous logging of Suders complaint to the PSP's EEO office(for the obvious purpose of supporting the PSP claim that Suders only complained about "age" and "political" discrimination to Elliott) the defendants have raised the specter of plaintiffs right to request the reinstitution of her retaliation claim.

12

Indeed what this new evidence does is demonstrate clearly that the plaintiff is entitled to a retaliation claim. Neither Smith Elliott, nor the PSP, nor opposing counsel, ever produced this log (see exhibit's B and C hereto) which demonstrates that the PSP had a duty to investigate the so-called theft powder incident in conjunction not only with Nancy's claims of sexual harassment(this log proves that the defendants had to have received evidence of Nancy's claims to Jubileer and Ridge) because even viewing this evidence in a light most favorable to the defendants there is a material dispute as to whether Nancy Suders complained to Smith Elliott only about age or political harassment or also retaliation in the form of the sexual harassment. We must remember Elliott says Suders complained about age discrimination in Suders says she complained about sex discrimination. Suders went to Jubileer and Ridge complaining about the political harassment, and included complaints about the sexual harassment.

In short this court is now presented with new evidence demonstrating a disputed material difference of fact as to the issue of whether Nancy Suders suffered retaliation for political reasons because the document demonstrates a new retaliation claim, one based not on Nancy Suders refusal to help Easton's son get a job, but rather on retaliation under Title VII and the First Amendment clauses protecting Suders right to speak

out on matters of public concern but more importantly to be free of retaliation for exercising her right to petition for government for a redress of grievances. Suders recollection of her conversations with Elliott and Elliott's recollection of her conversations with Suders are diametrically opposed with evidence now supporting Suders right to claim retaliation because the PSP obviously received information about Suders complaints to Ridge and Jubileer. Shortly after the complaint was logged (August 19, 1998?) Suders was subjected to the theft powder incident. Further, Easton went out of his way to use his authority and authority of the PSP to bring charges against Suders through the local DA, an effort which failed.

**Wherefore** plaintiff respectfully requests this court to take the following actions:

1. This court should vacate its prior orders and deny the defendants the right to present their Ellerth/Faragher affirmative defense.

2. In the alternative this court should order the defendants to present evidence sufficient to meet their burden in light of the law and evidence provided by plaintiffs to demonstrate an entitlement to the affirmative defense as opposed to requiring the plaintiffs to demonstrate how they are not entitled to it.

3. In light of the evidence in the form of the purported August 1998 EEO office log produced belatedly by the defendant PSP a matter of days ago, this court should reinstate plaintiff's right to present the jury question of retaliation because there is now clear and convincing evidence of a disputed material fact between Elliott and Suders over what Suders complained to Elliott (the designated recipient of discrimination complaints) about-namely that allegation that she did not complain to Elliott about the political harassment but rather about sexual harassment, while Elliott claims that Suders complained about age harassment and not sexual harassment. Elliott has already admitted that she reported to Evanko about the matter. Obviously any jury could conclude that Evanko and the PSP got complaints from the governor's office or from Senator Jubileer to whom Suders complained profusely while Elliott put her off and deflected her sex harassment claim. A few days later the theft powder incident occurs and Suders is forced out.

Respectfully Submitted,

By:    S/Don Bailey Esquire
       4311 N. 6th Street
       Harrisburg, PA 17110
       (717) 221-9500

15

## CERTIFICATE OF SERVICE

I, Don Bailey, do hereby certify that on this 13TH day of MARCH 2005 I served the following Document via electronic filing to the following attorneys:

*Sarah C. Yerger, Esquire*
*Office of Attorney General*
*Litigation Section*
*15th Floor, Strawberry Square*
*Harrisburg, PA 17120*
*(717) 705-2503*

*Samuel C. Stretton, Esquire*
*601 South High Street*
*Philadelphia, PA 19381*

                                         Respectfully submitted,

                                         s/Don Bailey
                                         Don Bailey
                                         Attorney ID #23786
                                         4311 North Sixth Street
                                         Harrisburg, PA  17110
                                         (717) 221-9500