# IN THE UNITED STATES DISTRICT COURT FOR
# THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CAPTAIN DARRELL G. OBER** | ) | **NO. 04-CV-1669** |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **VS.** | ) | **(Judge Conner)** |
| | ) | |
| **COMISSIONER JEFFREY B.** | ) | |
| **MILLER et al.** | ) | |
| | ) | |
| **Defendants** | ) | **Jury Trial Demanded** |

## VIDEO DEPOSITION OF CHARLES SKURKIS
### Held on March 8, 2005

**APPEARANCES:**

Don Bailey, Esquire
4311 N. 6th Street
Harrisburg, PA 17110
Attorney for Plaintiff

Daniel McGravey Esquire
Miller, Alfano & Raspanti, P.C.
Suite 3402
1818 Market Street
Philadelphia, PA 19103

# P.R. VIDEO INC.
### P.O. BOX 5228
### Harrisburg, PA 17110



EXHIBIT

1

*pages 33 - 36*

# Deposition of Major Charles Skurkis

**SHEET 9   PAGE 33**

1 the Pennsylvania State Police were
2 having with lawsuits by Don Bailey
3 did that arise during the meeting at
4 all?
5        A:   No sir.
6            Q:   Was there any
7 discussion of the issue of; of an
8 issue of the "Evans" related matter
9 discussed during the meeting?
10        A:   I don't believe so.
11            Q:   Was there any general
12 discussion of the PSP's public image
13 problems or these issues having to do
14 with sexual abuse.   Was that
15 discussed at all.   In general; in a
16 general context?
17        A:   There was.  I believe
18 Colonel Miller in explaining the
19 creation of the new position of
20 Deputy of Professional Responsibility
21 indicated that in concert with the
22 Kroll overseeing the Pennsylvania
23 State Police that would more; allow
24 for more time for the agency to deal
25 with Kroll.  In other words have a

**PAGE 34**

1 representative basically dedicated to
2 assist Kroll in their overseeing of
3 the department, monitoring of the
4 department and that would be vested
5 in the Deputy Commissioner of
6 Professional Responsibility.
7            Q:   Was there any
8 discussion of the complaint process
9 in sexual harassment cases during
10 that meeting?
11        A:   No sir.
12            Q:   Did you ever have any
13 discussions with Lieutenant Colonel
14 or with previously when he was Major
15 Brown or with Colonel Miller, either
16 one of those two at any time about
17 the complaint process of the
18 Pennsylvania State Police in sexual
19 harassment cases?
20        A:   Colonel Brown I am
21 sure I did yes.  Colonel Miller if
22 you are talking about his capacity as
23 commissioner I don't believe.
24            Q:   Is it your
25 understanding as we sit here today

**PAGE 35**

1 that a sexual harassment complaint in
2 the Pennsylvania State Police does
3 not require for purposes of follow up
4 a formal complaint or a written
5 procedure is that correct?
6        A:   I don't really
7 understand the question.
8            Q:   Let me rephrase it.
9 Is it your understanding with the
10 Pennsylvania State Police today that
11 a written complaint verification form
12 is required in order to begin an
13 investigation in a sexual harassment
14 case?
15        A:   Is required?
16        Q:   Yes?
17        A:   No, it's actually my
18 understanding that it is not
19 required.
20            Q:   Okay.  When did that
21 policy change if indeed it ever
22 changed?
23        A:   I don't know if it
24 ever changed.  As far, as long as I
25 can recall and I have been involved

**PAGE 36**

1 with the Bureau of Professional
2 Responsibility since its inception in
3 86; we have always treated sexual
4 harassment as a serious issue.  And
5 albeit there are procedures for
6 people to fill out worksheets and to
7 fill out verification forms in the
8 cases of very serious misconduct.  If
9 a victim or an individual that had
10 knowledge of such an episode did not
11 fill out the proper paper that would
12 not curtail any further investigative
13 effort.
14            Q:   And that has been that
15 way since the 80's and I will agree
16 that state; when I; by the way to let
17 you know where I am going on this, I
18 want to ask about these procedures
19 because I want to tie it in with
20 these procedures having to do with
21 Darrell Ober and so you know where I
22 am coming from in the initiation of
23 the investigations into his sharing
24 information with me which became, you
25 know which he is being disciplined

March 8, 2005

*Exhibit "A"*
*192 pages*

*pages 37-40*

# Deposition of Major Charles Skurkis

SHEET 10    PAGE 37
```
1 for; and we will get into that; I
2 will ask you about that. I want to
3 look at; it is very important and
4 what I am trying to establish is a
5 foundation or basis on how complaints
6 are processed. So I want to go from
7 the least which is a; my
8 understanding is that the
9 Pennsylvania State Police practice
10 and I have questioned Mr. Evanko on
11 this also, is that the Pennsylvania
12 State Police is if somebody makes an
13 allegation of sexual misconduct or
14 harassment particularly by a
15 supervisor that you don't have
16 initiate by a formal complaint there
17 is a duty to follow up. Is that
18 correct, of the department to follow
19 up on it?
20          A:    If it is brought to
21 the department's attention, yes there
22 is an.
23          Q:    Well for example, if
24 it is brought to the attention of; if
25 it were brought to your attention I
```

PAGE 38
```
1 am sure you would do something about
2 it; I have no reason to believe you
3 wouldn't. If it were brought to;
4 let's say you have a I don't know
5 what you would call it; sort of an
6 EEO kind of a lawsuit; Virginia Smith
7 Elliot is the one who comes to mind,
8 that type of person and Mr. Evanko
9 himself is always very prompt on
10 these things. The issue though is
11 that if those things are brought to
12 your attention a persons does not
13 have to file a formal complaint.
14 There is a duty to follow up or at
15 least there was a practice to follow
16 up by the Pennsylvania State Police
17 am I correct?
18          A:      I would say if
19 credible information is brought to
20 the attention of the department
21 regarding a complaint tenement to
22 sexual harassment, yes, that would be
23 followed up to some degree.
24          Q:      Without a formal
25 complaint being filed. A piece of
```

PAGE 39
```
1 paper?
2          A:    I don't know what the
3 formal complaint.
4          Q:    I don't either?
5          A:    I mean I don't know.
6          Q:    A form being filed.
7 Like a complaint verification form,
8 that type of thing. Is that
9 necessary in a sexual harassment
10 case?
11          A:    No.
12          Q:    Now what I am going to
13 do after this and I am going to go to
14 categories like public corruption.
15 See what your policy is and how it
16 varies if indeed it does okay?
17          A:    Um hum.
18          Q:    Because I am going to
19 get at practices and polices as
20 regards to processing of complaints
21 okay. Because we have questions and
22 we have raised them in the complaint
23 so you know where I am coming from
24 here. Now the process behind the
25 investigation into Darrell Ober
```

PAGE 40
```
1 and/or whether there was an
2 investigation into Colonel Miller as
3 a result of his complaints. That's
4 where I am going to go with this. So
5 again, let's begin with a category
6 and I am going to ask you questions
7 if there are different categories at
8 how these things are treated. Now as
9 it relates to sexual harassment and
10 if I understand your testimony
11 correctly a formal complaint or a
12 formal written complaint was not a
13 requirement in state police
14 procedures going back as far as 1986
15 when you were and I think you
16 referred to it as a "serious
17 allegation" or serious information
18 about sexual harassment was brought
19 up?
20          A:    That's correct.
21          Q:    Okay, let's move the
22 category over and let's go to public
23 corruption okay. If a person within
24 the Pennsylvania State Police has
25 reason to believe that a fellow PSP
```



*2 of 2 pages*