Westlaw.

250 F.Supp.2d 691　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 1
250 F.Supp.2d 691
**(Cite as: 250 F.Supp.2d 691)**

H

**Motions, Pleadings and Filings**

United States District Court,
S.D. Texas,
Houston Division.
Gloria RODRIGUEZ, Plaintiff,
v.
CITY OF HOUSTON, Defendant.
No. CIV.A. H-01-01970.

Feb. 27, 2003.

Female police officer brought suit against city, alleging sexually hostile work environment under Title VII. On city's motion for summary judgment, the District Court, Milloy, United States Magistrate Judge, held that: (1) genuine issues of material fact as to whether male superior's alleged sexual conduct towards officer was unwelcome, and as to whether conduct was sufficiently pervasive to create sexually hostile work environment, precluded summary judgment based on failure to establish prima facie case; (2) report by police department's internal affairs division (IAD), regarding investigation into officer's complaints of sexual harassment, was admissible under public records exception to hearsay rule; (3) officer did not act unreasonably when she opted to remain in her position, and thus officer's failure to relinquish position did not support city's claim that it was entitled to affirmative defense to vicarious liability for sexually hostile work environment claim; (4) officer satisfied her obligation to avail herself of preventative opportunities afforded by city, and thus city was not entitled to summary judgment on its affirmative defense on that basis; and (5) genuine issue of material fact as to whether city exercised reasonable care to prevent and correct promptly sexually harassing behavior by superior towards officer, precluded summary judgment on issue of whether city was entitled to affirmative defense.

Motion denied.

West Headnotes

**[1] Federal Civil Procedure ⇐2497.1**
170Ak2497.1 Most Cited Cases
On sexually hostile work environment claim under Title VII, genuine issue of material fact as to whether male superior's alleged sexual conduct towards female police officer for city was unwelcome, precluded summary judgment based on failure to establish prima facie case. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[2] Civil Rights ⇐1188**
78k1188 Most Cited Cases
(Formerly 78k167)
In determining whether employee was subjected to unwelcome sexual harassment, as required for prima facie case of hostile work environment under Title VII, appropriate inquiry is not whether employee participated voluntarily in friendly, or even sexual, relationship with alleged harasser, rather, question is whether alleged sexual advances were unwelcome. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[3] Civil Rights ⇐1188**
78k1188 Most Cited Cases
(Formerly 78k167)
Whether particular sexual act is welcome, for purposes of prima facie case of sexually hostile work environment under Title VII, is not determined from alleged harasser's point of view, instead, "unwelcome sexual harassment" is conduct of sexual nature that is unwelcome in sense that it is unsolicited or unincited and is undesirable or offensive to employee. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[4] Evidence ⇐333(1)**
157k333(1) Most Cited Cases
Report by police department's internal affairs division (IAD), regarding investigation into female police officer's complaint that male superior was sexually harassing her, contained factual findings resulting from investigation made pursuant to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



250 F.Supp.2d 691  
250 F.Supp.2d 691  
(Cite as: 250 F.Supp.2d 691)

Page 2

authority granted by law, and thus report was admissible in Title VII action against city, under public records exception to hearsay rule, absent evidence that sources of information in report lacked trustworthiness. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Fed.Rules Evid.Rule 803(8), 28 U.S.C.A.

**[5] Civil Rights ⇌1184**  
78k1184 Most Cited Cases  
(Formerly 78k167)

**[5] Civil Rights ⇌1185**  
78k1185 Most Cited Cases  
(Formerly 78k167)  
If Title VII claimant can show that she suffered "tangible employment action" as result of sexual harassment, then harassment claim is evaluated as one which falls within category of "quid pro quo" law suit, but if there has been no tangible employment action, claim is viewed as one for hostile work environment. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[6] Federal Civil Procedure ⇌2497.1**  
170Ak2497.1 Most Cited Cases  
On Title VII sexually hostile work environment claim, genuine issue of material fact as to whether male superior's alleged sexually harassing conduct towards female police officer for city was frequent and interfered with her work performance, and thus as to whether conduct was objectively offensive and pervasive, so as to create sexually hostile work environment, precluded summary judgment based on failure to establish prima facie case. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[7] Civil Rights ⇌1528**  
78k1528 Most Cited Cases  
(Formerly 78k371)  
Because tangible employment decision is official act by company, employer is always held to be vicariously liable for proven sexual harassment by supervisor in quid pro quo action under Title VII. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[8] Civil Rights ⇌1528**  
78k1528 Most Cited Cases  
(Formerly 78k371)

To establish employer's vicarious liability in sexually hostile work environment case, under Title VII, employee must show that alleged harassment was either severe or pervasive. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[9] Civil Rights ⇌1185**  
78k1185 Most Cited Cases  
(Formerly 78k167)  
To be actionable under Title VII, sexually objectionable work environment must be both objectively and subjectively offensive, i.e., one that a reasonable person would find hostile or abusive, and one that victim did in fact perceive to be so. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[10] Civil Rights ⇌1185**  
78k1185 Most Cited Cases  
(Formerly 78k167)  
In determining whether employee was subjected to sexually hostile work environment, under Title VII, fact finder must consider all of the circumstances, including frequency of alleged conduct, severity of alleged conduct, degree to which conduct is physically threatening or humiliating, degree to which conduct interferes unreasonably with employee's work performance, and whether conduct undermined employee's workplace competence. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[11] Federal Civil Procedure ⇌2497.1**  
170Ak2497.1 Most Cited Cases  
To survive summary judgment on sexually hostile work environment claim, under Title VII, plaintiff must show that harassment was either severe or pervasive; employee does not have to prove both. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[12] Civil Rights ⇌1528**  
78k1528 Most Cited Cases  
(Formerly 78k371)

**[12] Civil Rights ⇌1549**  
78k1549 Most Cited Cases  
(Formerly 78k387)  
Under Title VII, employer is subject to vicarious liability to victimized employee for actionable sexually hostile work environment created by

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

250 F.Supp.2d 691                                                                   Page 3
250 F.Supp.2d 691
(Cite as: 250 F.Supp.2d 691)

supervisor with immediate, or successively higher, authority over employee, but **employer** may raise affirmative defense to liability or damages, subject to proof by preponderance of the evidence. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[13] Civil Rights ⊜1189
78k1189 Most Cited Cases
(Formerly 78k167)

[13] Civil Rights ⊜1528
78k1528 Most Cited Cases
(Formerly 78k371)
To establish affirmative defense to vicariously liability for sexually hostile work environment created by supervisor, under Title VII, employer must demonstrate (1) that employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by employer to avoid harm otherwise. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[14] Civil Rights ⊜1189
78k1189 Most Cited Cases
(Formerly 78k167)

[14] Civil Rights ⊜1528
78k1528 Most Cited Cases
(Formerly 78k371)
Female police officer's failure to relinquish position, although it meant she would be in daily contact with male superior, who was allegedly sexually harassing her, did not support city's affirmative defense to vicarious liability for sexually hostile work environment, under Title VII, because officer acted reasonably when she opted to remain in her position. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[15] Civil Rights ⊜1189
78k1189 Most Cited Cases
(Formerly 78k167)

[15] Civil Rights ⊜1528
78k1528 Most Cited Cases
(Formerly 78k371)
Where female police officer complied with city's policy for reporting workplace harassment when she informed immediate supervisor that male superior was sexually harassing her, officer satisfied her obligation to avail herself of preventative opportunities afforded by city, and thus city was not entitled to summary judgment on its affirmative defense to vicarious liability for sexually hostile work environment allegedly created by superior; city provided three methods by which employees could report harassment, and officer utilized one method. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[16] Civil Rights ⊜1189
78k1189 Most Cited Cases
(Formerly 78k167)

[16] Civil Rights ⊜1528
78k1528 Most Cited Cases
(Formerly 78k371)
Employer is not entitled to summary judgment on affirmative defense to vicarious liability for sexually hostile work environment caused by supervisor if complainant can show that she complied with employer's own policy on reporting workplace harassment. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[17] Civil Rights ⊜1189
78k1189 Most Cited Cases
(Formerly 78k167)

[17] Civil Rights ⊜1528
78k1528 Most Cited Cases
(Formerly 78k371)
In determining whether employer is entitled to affirmative defense, under Title VII, to vicarious liability for sexually hostile work environment created by supervisor, if employer provides alternate procedures for reporting harassment, then employee is deemed to have acted reasonably if she takes advantage of any one of them; employee need not exhaust every one of corrective opportunities provided. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[18] Federal Civil Procedure ⊜2497.1
170Ak2497.1 Most Cited Cases
Genuine issue of material fact as to whether city exercised reasonable care to prevent and correct promptly sexually harassing behavior by male

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

250 F.Supp.2d 691
250 F.Supp.2d 691
(Cite as: 250 F.Supp.2d 691)

Page 4

superior towards female police officer, precluded summary judgment on issue of whether city was entitled to affirmative defense, under Title VII, to vicarious liability for sexually hostile work environment allegedly created by superior. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[19] Civil Rights ⚖1528
78k1528 Most Cited Cases
(Formerly 78k371)

[19] Civil Rights ⚖1549
78k1549 Most Cited Cases
(Formerly 78k387)
To succeed on the *Faragher/Ellerth* affirmative defense to vicarious liability for sexually hostile work environment under Title VII, on a motion for summary judgment, employer must establish both of the essential elements of defense by preponderance of evidence. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[20] Civil Rights ⚖1189
78k1189 Most Cited Cases
(Formerly 78k167)
To avoid liability for sexually hostile work environment, under Title VII, employer must take prompt remedial action to end unwelcome behavior. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[21] Civil Rights ⚖1189
78k1189 Most Cited Cases
(Formerly 78k167)

[21] Civil Rights ⚖1528
78k1528 Most Cited Cases
(Formerly 78k371)
In determining whether **employer** is entitled to affirmative defense, under **Title VII**, to vicarious liability for sexually hostile work environment allegedly created by supervisor, issue of whether employer's action in response to **complaint** was appropriate is fact intensive inquiry, and not every response by **employer** will be **sufficient** to discharge its legal duty, rather **employer** may be liable despite having taken remedial steps if plaintiff can establish that employer's response was not "reasonably calculated" to end harassment. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[22] Civil Rights ⚖1189
78k1189 Most Cited Cases
(Formerly 78k167)

[22] Civil Rights ⚖1528
78k1528 Most Cited Cases
(Formerly 78k371)
Employer's action in response to complaints of sexual harassment may be considered remedial, so as to support its affirmative defense to vicarious liability for sexually hostile work environment, under Title VII, if action is taken by one with authority to address harassment problem. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

*694 Andrew S. Golub, Dow Golub Berg & Beverly, LLP, Houston, TX, for Gloria Rodriguez, plaintiff.

Suzanne Levinson Hanneman, City of Houston Legal Dept, Houston, for City of Houston, defendant.

**MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

MILLOY, United States Magistrate Judge.

On April 10, 2002, the parties to this action consented to proceed before a United States magistrate judge for all purposes, including trial and entry of final judgment, under 28 U.S.C. § 636(c). (Docket Entry # 14). Before the court is a motion for summary judgment, under Rule 56(c) of the Federal Rules of Civil Procedure, that was filed by Defendant City of Houston ("Defendant," the "City"). (Defendant's Motion for Summary Judgment ["Defendant's Motion"], Docket Entry # 31). Plaintiff Gloria Rodriguez ("Plaintiff," "Rodriguez") has responded to the motion. (Plaintiff's Response to Defendant's Motion for Summary Judgment ["Plaintiff's Response"], Docket Entry # 36). After a review of the motion, the evidence submitted, and the applicable law, it is ORDERED that the City's motion for summary judgment is DENIED.

**Background**

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=A0055800000... 3/13/2005

250 F.Supp.2d 691
250 F.Supp.2d 691
(Cite as: 250 F.Supp.2d 691)

Page 5

This employment discrimination lawsuit stems from Plaintiff's claim that she was sexually harassed by a superior while employed with the Houston Police Department ("HPD"; the "Department"). It is undisputed that, in July 1997, Rodriguez reported the alleged harassment to her immediate supervisor, but she complains that Defendant did not take appropriate steps to protect her from the offensive conduct, and it continued until November 1998. As a result, Plaintiff alleges that *695 she suffered from both emotional and economic harm.

Plaintiff graduated from the Houston Police Academy in May 1996. (Defendant's Motion, Exhibit 2 ["Defendant's Ex. 2"]: Administrative Statement of Officer G.G. Rodriguez ["Rodriguez Statement"], p.1). After serving a six-month probationary period, she was assigned to the Kingwood Substation in Northeast Houston ("Kingwood"). At all relevant times, Rodriguez was assigned the evening shift, where she served as a desk officer. Sergeant Gerald A. McAnulty ("McAnulty") was her immediate supervisor, but she also reported, on occasion, to Sergeant Robert D. Silva ("Silva"). (Defendant's Motion, p. 1; Plaintiff's Response, Exhibit 8 ["Plaintiff's Ex. 8"]: Oral Deposition of Robert D. Silva, Nov. 20, 2002 ["Silva Depo."], p. 15). McAnulty and Silva were both supervised by Lieutenant Frank Jackson ("Jackson"), who was also assigned to the Kingwood Substation on the same shift as Rodriguez. (Defendant's Motion, p. 1).

Rodriguez claims that "Jackson began pursuing a sexual relationship with her" within days of her arrival at the substation. (Plaintiff's Response at 3). She insists that she did not invite Jackson's attentions, and that she informed him that his conduct made her uncomfortable. Jackson admits that he treated Rodriguez in a manner which "exceeded the bounds of a supervisor and subordinate," but he maintains that their relationship was a friendly one only, and that their friendship was mutual. (Defendant's Ex. 3: Administrative Statement of Lt. F.S. Jackson, Feb. 19, 1999 ["Jackson Statement"], pp. 12-13; and see Defendant's Motion at 2). There is no dispute that, in July 1997, Rodriguez told Sergeant Silva that the lieutenant had been "bothering her," and that she wanted him "to leave her alone." [FN1] (Defendant's Motion at 4; Plaintiff's Response at 6) (both citing Oral and Videotaped Deposition of Gloria Rodriguez, Nov. 13, 2002 ["Rodriguez Depo."], p. 54, submitted as Defendant's Ex. 1, and Plaintiff's Ex. 5). Silva suggested that Rodriguez call HPD Women's Issues Unit, and he even provided her with the telephone number to do so. (Defendant's Motion at 4; Plaintiff's Response at 7). In addition, Silva told Plaintiff to discuss this with Sergeant McAnulty. A few days later, on July 11, 1997, Rodriguez approached McAnulty in tears. (Id.; Plaintiff's Ex. 6: Oral Deposition of Gerald A. McAnulty, Dec. 3, 2002 ["McAnulty Depo."], p.51). In his sworn deposition, McAnulty testified that Rodriguez told him, "Lieutenant Jackson is following me home and he's calling me all the time and I don't want him to." (McAnulty Depo., p.51). But Rodriguez also told McAnulty that she was not certain if she wanted to file a formal complaint against Jackson. (Id. at 53; Rodriguez Depo., p. 58). Because of her uncertainty, and his own, McAnulty called the HPD Internal Affairs Division ("IAD") for advice. (McAnulty Depo., pp. 51-56; Defendant's Ex. 7: Administrative Statement of Sgt. G.A. McAnulty, Feb. 11, 1999 ["McAnulty Statement"], p.5). McAnulty reports that, without naming names, he alerted IAD to "a very sensitive situation that possibly involved sexual harassment between ... my Lieutenant and one of my officers," and stated that the female officer did not want to make a complaint. (McAnulty Statement, p.6). There is some dispute about the instructions McAnulty then received from IAD. (Compare Defendant's Motion at 5, with Plaintiff's Response at 8- *696 9). However, there is no question that the sergeant then telephoned Jackson at his home to tell him that Rodriguez had complained about his conduct and that he should put a stop to it. The next day, Jackson apologized to Rodriguez. (Rodriguez Depo., p. 62; and see McAnulty Statement, p. 6). She said she did not wish to speak with him, and she complained to McAnulty a second time. (Id.). McAnulty then held a closed-door meeting with Jackson and Rodriguez, and again informed Jackson to avoid Rodriguez. (Defendant's Motion at 5-6; Plaintiff's Response at 9).

FN1. There is some confusion about the exact date on which Plaintiff complained to Silva. (See Silva Depo., pp. 23-24).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

By all accounts, Jackson complied with Rodriguez's request, and McAnulty's admonishment, for some time. Plaintiff complains, however, that eventually he began to "hover" at her desk, to isolate her from her co-workers, and to inject himself into her work duties. (Plaintiff's Response at 10). Further, Jackson reportedly made inappropriate sexual comments to Rodriguez repeatedly, and gave her gifts that were unsolicited and not in any way related to her work. (Id. at 11-13) (citing Rodriguez Depo., pp. 24-26, 50-51, 83, 94-95, 106-09; Plaintiff's Ex. 4: Oral Deposition of Frank S. Jackson, Dec. 3, 2002 ["Jackson Depo."], pp. 29-31, 42, 214-17). In her lawsuit, Rodriguez alleges that, in the fall of 1998, she began to suffer from "fainting spells," which she implies were tied to Jackson's increased attentions to her at the same time. (Plaintiff's Response at 12-13). In October 1998, Jackson sent a bouquet of flowers to Rodriguez's home. (Id. at 14; Defendant's Motion at 8). Plaintiff's complaint recites that she perceived this action as an attempt to "destroy her marriage." (Plaintiff's Response at 14; Rodriguez Depo. at 122-23). It is undisputed that, on October 20, 1998, Jackson wrote a letter to Rodriguez stating, "I never knew love until you came into my life." (Defendant's Ex. 13, pp. 1-3; Plaintiff's Ex. 3, pp. 1-3). This letter apparently upset her, and led Jackson to write a second, apologetic, letter. (Defendant's Ex. 13, p. 4; Plaintiff's Ex. 3, p. 4). On November 4, 1998, Rodriguez brought both letters to Sergeant McAnulty. (Defendant's Motion at 11; Plaintiff's Response at 16). Two days later, at her request, Rodriguez transferred to the day shift. (Defendant's Ex. 15; Rodriguez Depo., p. 142). The following week, she filed a sexual harassment complaint with the IAD, and an investigation into her claims followed. (Defendant's Motion at 11; Plaintiff's Response at 17). At the same time, Rodriguez filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that she had been "subjected to an offensive and hostile working environment, in violation of Title VII of the Civil Rights Act of 1964," 42 U.S.C. § 2000e, et seq., as amended ("Title VII"). (Plaintiff's Complaint, Ex. A: Equal Employment Opportunity Commission Determination Letter, Sept. 29, 1999 ["EEOC Determination Letter"] ). The EEOC found Plaintiff's claims of sexual discrimination valid and issued a "right to sue" letter to her. (Id.;

Plaintiff's Complaint ¶¶ 14-15). Before this court, Plaintiff claims that the City violated her rights under Title VII because it did not intervene to stop Jackson's harassment after she complained to her immediate supervisor in July 1997. (Plaintiff's Complaint ¶¶ 8, 9). Because this failure allegedly caused her to suffer from "extreme, severe emotion [sic] distress and other damage," she asks for an award of back pay and front pay, compensatory damages, attorney's fees, and costs. (Plaintiff's Complaint ¶ 19).

Defendant has moved for a summary judgment, arguing that Rodriguez cannot establish a prima facie case of sexual *697 harassment because the evidence does not support her allegations that Jackson's conduct was "unwelcome," or that it "affected a 'term, condition, or privilege' of her employment." (Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment ["Defendant's Reply"], pp.1-2, Docket Entry # 41). Defendant argues, as well, that even if the court should find that Plaintiff was subjected to unwelcome attentions from Jackson, her claims fail because the City took "appropriate remedial action ... to halt the harassment" and because Rodriguez "unreasonably failed to take advantage of ... preventative or corrective opportunities provided by the employer." (Id. at 5, 6-7) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 615-16 (5th Cir.1999)). Plaintiff insists that the summary judgment evidence raises genuine issues of fact on whether she was subjected to a sexually hostile work place and whether the City responded to her complaint according to its own policies. (Plaintiff's Response at 20, 36, 41). Plaintiff points out that these fact issues preclude a summary judgment in the City's favor. After review, the court agrees and, for the reasons set out below, Defendant's motion for summary judgment is DENIED.

**Standard of Review**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Under Rule 56(c), the moving party bears the initial burden of "informing the district

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

250 F.Supp.2d 691
250 F.Supp.2d 691
(Cite as: 250 F.Supp.2d 691)

Page 7

court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir.1994). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Id.*

When the moving party has met its Rule 56 burden, the nonmovant cannot survive a motion for summary judgment by resting merely on the allegations in its pleadings. *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995). The nonmovant must go beyond the pleadings and designate specific facts to show that there is a genuine issue for trial. *Little*, 37 F.3d at 1075. But, in deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, "Rule 56 mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing **sufficient** to establish the existence of an element essential to that party's **case**, and on which that party will bear the burden of proof at trial". *Little*, 37 F.3d at 1075.

Discussion

[1] Title VII is explicit that an **employer** may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (1994). Almost twenty years ago, in *698*Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the United States Supreme Court found that sexual harassment, which creates a "hostile or abusive work environment," is an actionable claim under Title VII. To prevail on this, or any other claim made under Title VII, a plaintiff must first establish a prima facie case by a preponderance of the evidence. *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 564 (5th Cir.2001); *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 992 (5th Cir.1996) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). To make a prima facie showing of sexual harassment by a superior, a claimant must at least raise a fact issue on the following four elements:

(1) She belongs to a protected class; (2) She was subjected to unwelcome sexual harassment; (3) The harassment complained of was based on sex; and (4) The harassment affected a term, condition, or privilege of employment.

*See Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir.1999). A prima facie case, once established, "raises an inference of unlawful discrimination." *Blow v. City of San Antonio*, 236 F.3d 293, 296-297(5th Cir.2001). The burden of production then shifts to the defendant to articulate a "legitimate, nondiscriminatory reason for the challenged employment practice." *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 654 (5th Cir.1996). "A defendant may meet this burden by presenting evidence that, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Rhodes*, 75 F.3d at 992. "If the employer presents such evidence, then the burden of production shifts back to the plaintiff to present probative evidence that the employer's stated reason was pretext." *CSC Logic, Inc.*, 82 F.3d at 654.

[2] Here, there is no dispute that Plaintiff belongs to a protected class and that the allegations stem from her gender. The City argues, however, that there is no competent summary judgment evidence to show that Jackson's attentions were "unwelcome," or that they "affected a term, condition or privilege of [her] employment." (*See* Defendant's Motion at 19, 21, 24; Defendant's Reply at 1-2). First, Defendant insists that "some of the conduct complained of" was not only consensual, but was initiated by Rodriguez and not by Jackson. (Defendant's Motion at 21). Indeed, Defendant points to Rodriguez's own statements, in which she acknowledges that she kissed Jackson voluntarily, invited him to attend church with her family, and had lunch with him "almost every day." (*Id.* at 21 n. 83) (citing Rodriguez Depo., pp. 28, 32, 46; Rodriguez Statement, pp. 6, 8). The court

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

250 F.Supp.2d 691
250 F.Supp.2d 691
(Cite as: 250 F.Supp.2d 691)

Page 8

agrees with the City's summary of the evidence to date. But the appropriate inquiry is not whether Rodriguez participated voluntarily in a friendly, or even a sexual, relationship with Jackson. Rather, the question is whether his "alleged sexual advances were unwelcome." *Meritor*, 477 U.S. at 68, 106 S.Ct. 2399. In this regard, the Supreme Court has held, expressly, that "the fact that sex-related conduct was 'voluntary,' in the sense that the **complainant** was not forced to participate against her will, is not a defense to a sexual harassment suit brought under **Title VII**." *Id.* In *Meritor*, the trial court found that the alleged sexual relationship "was a voluntary one," and it granted a summary judgment in favor of the **employer**. *Id.* at 61-62, 106 S.Ct. 2399. The Supreme Court found that the district court "erroneously focused on the 'voluntariness' of [the employee's] participation in the claimed sexual episodes," because "[t]he gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.'" *Id.* at 68, 106 S.Ct. 2399 (quoting 29 C.F.R. § 1604.11(a) (1985)). It follows that the *699 critical inquiry here is whether Rodriguez has raised a fact issue on whether Jackson's advances were welcome.

[3][4] In this instance, the City argues that Rodriguez has presented no evidence to show that Jackson "knew his alleged conduct was unwelcome," and so no fact issue remains for trial. (Defendant's Reply at 2). As Rodriguez correctly notes, however, whether a particular act is welcome is not determined from the alleged harasser's point of view. Instead, "unwelcome sexual harassment" is defined, in this circuit, as "conduct of a sexual nature that is unwelcome in the sense that it is unsolicited or unincited and is undesirable or offensive to the employee." *Jones v. Flagship Int'l*, 793 F.2d 714, 719 (5th Cir.1986). Indeed, on just this issue, the Supreme Court has remarked that

> [T]he question whether particular conduct was indeed unwelcome presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact.... The EEOC Guidelines emphasize that the trier of fact must determine the existence of sexual harassment in light of "the record as a whole" and "the totality of circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred."

*Meritor*, 477 U.S. at 68-69, 106 S.Ct. 2399 (quoting 29 C.F.R. § 1604.11(b)). In this case, Rodriguez has provided evidence that Jackson's conduct was "undesirable or offensive" to her. She testified at her deposition, for example, that Jackson massaged her shoulders on more than one occasion, and that "every time" he did so, she told him to stop. (Rodriguez Depo., p. 22; *and see* Rodriguez Statement, p.2). She testified further that "he said that I was very pretty and that he would do anything to go to bed with me." (Rodriguez Depo., p. 23). In response, she allegedly told him, "Please don't say that. I'm a married woman and I have a happy marriage." (*Id.*). Rodriguez stated, in addition, that Jackson brought her presents "on many occasions," even though she reportedly told him not to do so because "it was inappropriate." (Rodriguez Statement, p. 4). She also reports that she asked Jackson to "leave me alone and let me do my work several times." (*Id.* at 5). In fact, in her administrative statement to IAD, Rodriguez claimed, "I did not know how to get rid of the [lieutenant], I was scared of him." (*Id.* at 6). Although she concedes that she kissed Jackson on four occasions, she claims that, in each event, she yielded to the "severe pressure" he placed on her to do so. (*Id.* at 5, 6; *and see* Rodriguez Depo. at 37, 45). Sergeant McAnulty also testified to his observations of the alleged sexual "pressure" from Jackson. McAnulty testified that, in May or June of 1997, Jackson admitted that he had "pressured" Rodriguez to enter into a sexual relationship with him and claimed that "most women would have given in by now." (McAnulty Depo., pp. 35, 39, 61, 62; McAnulty Statement, p.3, ¶ 4). McAnulty also reported that he had seen Rodriguez evade Jackson's advances on at least one occasion, which made him believe "that she probably didn't want him to do it." (McAnulty Depo., p. 103; *and see* McAnulty Statement, p.2, ¶ 2). Further, the evidence shows that Rodriguez complained to at least five co-workers about Jackson's behavior. (*See* Plaintiff's Ex. 1: Internal Affairs Division Investigative Report ["IAD Report"], p. 78, Statement of Officer T.A. Brown; pp. 95-96, Statement of Officer D.A. Cannon; p. 125, Statement of Officer E. Jackson; p. 133, Statement of Officer S.W. McDonald; pp. 151, 153, *700 Statement of Officer L.S. Reichert). [FN2] From this record, the court concludes that Rodriguez has raised a genuine issue of material fact on whether Jackson's attentions were unwelcome. *See Meritor*,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

250 F.Supp.2d 691  
250 F.Supp.2d 691  
(Cite as: 250 F.Supp.2d 691)

Page 9

477 U.S. at 68-69, 106 S.Ct. 2399; *Jones*, 793 F.2d at 719.

> FN2. Defendant objects to Plaintiff's Exhibit 1, in its entirety, arguing that "it contains multiple levels of hearsay" and "is not material or relevant to any issue in this action." (Docket Entry # 42, p.1). This objection is without merit. The disputed Internal Affairs Division Report contains "factual findings resulting from an investigation made pursuant to authority granted by law." Fed.R.Evid. 803(8); *and see* (Defendant's Ex. 17: Oral Deposition of Clarence O. Bradford, Nov. 12, 2002, pp. 31- 32). Defendant has not shown that "the sources of [the] information" in this report "lack ... trustworthiness," and the report is, therefore, admissible. *See* Fed.R.Evid. 803(8). To the extent that any individual statement within the exhibit is hearsay, immaterial, or irrelevant, it has not been considered.

[5][6] Next, Defendant argues that Plaintiff cannot show that the alleged harassment "affected a term, condition, or privilege of her employment," an essential element of her prima facie case. (Defendant's Motion at 19, 24; Defendant's Reply at 1-2). In recent decisions, the Fifth Circuit has detailed two different ways in which a claimant may establish this element of a sexual harassment claim. *See Casiano v. AT&T Corp.*, 213 F.3d 278, 283 (5th Cir.2000). If the claimant can show that she suffered a "tangible employment action" as a result of the harassment, then the claim is evaluated as one which falls within the category of a "quid pro quo" law suit. *Id.* If there has been no tangible employment action, then the claim is viewed as one for a "hostile environment." *Id.*

[7][8][9] The Supreme Court has explained that "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Because a tangible employment decision is an official act by the company, the employer is always held to be vicariously liable for proven harassment by a supervisor in a quid pro quo action. *Id.* at 762, 118 S.Ct. 2257; *Casiano*, 213 F.3d at 284. To establish the employer's vicarious liability in a hostile environment case, however, the employee must show that the alleged harassment was either severe or pervasive. *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 483 (5th Cir.2002); *Casiano*, 213 F.3d at 284. Further, "to be actionable under Title VII, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so." *La Day*, 302 F.3d at 482 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 269 (5th Cir.1998)) (brackets omitted). Here, the parties agree that Plaintiff did not suffer any tangible employment decision, and that her claim is based entirely on an allegedly sexually hostile environment. Therefore, to establish a prima facie case against the City, Rodriguez must present evidence to show that Jackson's actions were so severe or pervasive as to create an offensive workplace environment. *See La Day*, 302 F.3d at 482-83.

[10][11] Again, Rodriguez has testified, in support of her claims, that Jackson's behavior was offensive to her. The remaining question, then, is whether a reasonable *701 person in Rodriguez's position would have found the Kingwood environment "hostile or abusive." *See La Day*, 302 F.3d at 483 (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). In deciding that question, a fact finder must consider all of the circumstances presented from any source. *Harris*, 510 U.S. at 23, 114 S.Ct. 367; *La Day*, 302 F.3d at 482; *Butler*, 161 F.3d at 269. The relevant circumstances may include the frequency of the alleged conduct; the severity of the alleged conduct; the degree to which the conduct is physically threatening or humiliating; and the degree to which the conduct interferes unreasonably with an employee's work performance. *Harris*, 510 U.S. at 23, 114 S.Ct. 367; *La Day*, 302 F.3d at 482; *Butler*, 161 F.3d at 269. In addition, the fact finder may consider "whether the complained of conduct undermined the plaintiff['s] workplace

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

250 F.Supp.2d 691
250 F.Supp.2d 691
(Cite as: 250 F.Supp.2d 691)

Page 10

competence." *Butler*, 161 F.3d at 270; *and see Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 615 (5th Cir.1999) (holding that employee established prima facie case of harassment because supervisor's "inappropriate behavior was constant and caused others to ostracize and make fun of [her]"). To "survive summary judgment on a hostile environment claim," Rodriguez must show that these factors combine in a way that is either "severe *or* pervasive. [She] does not have to prove both." *La Day*, 302 F.3d at 483 (internal quotations omitted).

To show that the alleged harassment was pervasive, Rodriguez claims that Jackson touched her legs and massaged her back and shoulders "on several occasions"; that he brought her unsolicited food and gifts repeatedly; and that he made numerous inappropriate comments to her. (Plaintiff's Response at 33-34; Rodriguez Statement pp. 2-3). Plaintiff also contends that Jackson's actions interfered with her performance because he "changed the nature of [her] job, made it more difficult for [her] to perform it, and undermined her competence." (Plaintiff's Response at 33). She claims that Jackson kept her isolated from the other Kingwood employees "by getting after them when they would come into my office for any reason." (Rodriguez Statement, p. 5). Jackson does not dispute that he visited Rodriguez in her office frequently and admits that he even performed some of her duties. (*See* Defendant's Motion at 23; Jackson Statement at 2; Rodriguez Statement at 7; McAnulty Depo. pp. 23, 98-99). It is reported that this behavior led some of Rodriguez's co-workers to conclude that she "was incompetent and did not know how to perform her duties as an officer." (IAD Report, p. 75, Statement of Officer T.A. Brown; *and see id.*, p. 97, Statement of Officer D.A. Cannon). Further, there is evidence that Rodriguez lost the respect of her peers because they believed that she received special treatment from Jackson. (*See id.* p. 87, Statement of Officer T.C. Buchanan; pp. 118-19, Statement of Sergeant C.M. Graves; p. 144, Statement of Officer P. Morales; p. 168, Statement of C.A. Vazquez). In fact, Sgt. McAnulty confirmed that this perception had "an impact upon the whole station," and that Jackson's open pursuit of Rodriguez "was having negative impacts on the work environment for all the officers involved." (McAnulty Depo. pp. 24, 37, 108-09).

From this record, the court finds that Plaintiff has raised a genuine issue of material fact on whether the conduct alleged was frequent and interfered with her work performance. *See Harris*, 510 U.S. at 23, 114 S.Ct. 367; *La Day*, 302 F.3d at 482; *Skidmore*, 188 F.3d at 615; *Butler*, 161 F.3d at 269-70. Accordingly, Plaintiff has *702 established a prima facie case that the conduct was objectively offensive and pervasive, and so created a sexually hostile work environment, in violation of Title VII. *See La Day*, 302 F.3d at 483; *Casiano*, 213 F.3d at 284. Defendant's motion for summary judgment, on this matter, is DENIED.

[12][13][14][15] Next, the City argues that, even if Jackson's behavior did create a sexually hostile environment, it should not be held liable for his conduct. In making this argument, Defendant invokes the affirmative defense created by the Supreme Court in the *Ellerth* and *Faragher* cases. (Defendant's Motion at 19, 24) (citing *Burlington Indus. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)). In those decisions, the Court held that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275. However, the employer in such a case may "raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence." *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275 (citing Fed. R. Civ. Proc. 8(c)). To do so, the employer must demonstrate both of the following two elements:

> (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid harm otherwise.

*Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275. In its attempt to make the required showing, Defendant argues, first, that Plaintiff "failed to avoid harm" because she "opted to remain in the same position knowing full well she would be in daily contact with

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 11

250 F.Supp.2d 691
250 F.Supp.2d 691
(Cite as: 250 F.Supp.2d 691)

Jackson." (Defendant's Reply at 7; Defendant's Motion at 22). The contention that Rodriguez should have left her position, or duties, at Kingwood is without merit. Defendant has not cited any caselaw, and this court has found none, to support the argument that an employee subjected to sexual harassment is "unreasonable" if she fails to relinquish an otherwise favorable position. On the contrary, the Supreme Court has emphasized that no person should be required to choose between making a living and running "a gauntlet of sexual abuse." *Meritor*, 477 U.S. at 67, 106 S.Ct. 2399 (quoting *Henson v. Dundee*, 682 F.2d 897, 902 (11th Cir.1982)). The City also argues that Plaintiff did not timely "avail herself of the preventative opportunities afforded by Defendant" because, prior to November 1998, she failed to contact either IAD or the HPD Women's Issues Unit, even though Sergeant Silva informed her that she had the option to do so. (Defendant's Motion at 21-22). Plaintiff responds that she satisfied her obligation, under Fifth Circuit precedent, because she complained to Sergeant McAnulty, her immediate supervisor, and because this notice "was precisely what the City told her to do." (Plaintiff's Response at 42) (citing *Williamson v. City of Houston*, 148 F.3d 462, 466-67 (5th Cir.1998)).

[16] In this circuit, an employer is not entitled to summary judgment on a *Faragher/Ellerth* affirmative defense if the complainant can show that she complied with the employer's own policy on reporting workplace harassment. See *703Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 414 (5th Cir.2002); *Williamson*, 148 F.3d at 466-67. The Fifth Circuit has explained that this rule is intended to enforce the goals of Title VII, that is, "to encourage the creation of antiharassment policies and effective grievance mechanisms." *Williamson*, 148 F.3d at 466-67 (quoting *Ellerth*, 524 U.S. at 764, 118 S.Ct. 2257). Here, the uncontested summary judgment evidence shows that HPD's official policy provides employees with three alternate and, presumably, equally effective routes for reporting discrimination and sexual harassment. (See HPD General Order No. 300-11 on Discrimination and Harassment, Nov. 2, 1995 ["General Order 300-11"], *submitted as* Defendant's Ex. 18, *and* Plaintiff's Ex. 9). Under that policy, employees are instructed to report sexual harassment

to *one* of the following:
. Victim's immediate supervisor
. Internal Affairs Division
. Women's Issues Unit

(*Id.* ¶ 2: Reporting Procedures) (emphasis added). For these purposes, it is noteworthy that HPD does not require a complainant to act, in any way, once a report has been lodged with one of the three appropriate "receiving parties." See *Wyatt*, 297 F.3d at 414 (holding that employee's action in reporting alleged harassment to a higher-up was reasonable because "nothing in [the employer's] harassment policy and procedures required [the employee] to take additional steps"). Instead, it is the receiving party's obligation to "forward written notification to the Chief of Police via the appropriate chain of command." (General Order 300-11, ¶ 2).

[17] In this instance, there is no question that Rodriguez reported the alleged sexual harassment to McAnulty and that, as her immediate supervisor, he was a designated "receiving party" for such complaints. In this respect, the Fifth Circuit has held, expressly, that

> When an organization designates a particular person or persons to receive harassment complaints, it sends a clear signal that those persons have the authority to accept notice of harassment problems.... To allow employers to escape liability when ... the complainant has followed the employer's policy for reporting harassment would undermine [the] goals [of Title VII, as detailed in *Faragher* and *Ellerth* ].

*Williamson*, 148 F.3d at 466-67. Indeed, the court continued that "[i]f the employer has structured its organization such that a given individual has the authority to accept notice of a harassment problem, then notice to that individual is sufficient to hold the employer liable." *Id.* at 467. Further, if the employer provides alternate procedures for reporting harassment, then an employee is deemed to have acted reasonably if she takes advantage of any one of them. See *Watts v. Kroger Co.*, 170 F.3d 505, 511 (5th Cir.1999); *Williamson*, 148 F.3d at 467 (discussing *Young v. Bayer Corp.*, 123 F.3d 672 (7th Cir.1997)). She need not exhaust every one of the "corrective opportunities" provided. *Watts*, 170 F.3d at 511. Here, Rodriguez followed HPD's official policy when she told McAnulty that Jackson was harassing

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

250 F.Supp.2d 691
250 F.Supp.2d 691
(Cite as: 250 F.Supp.2d 691)

Page 12

her. For that reason, the City may not escape liability at the summary judgment phase by asserting the *Faragher/Ellerth* affirmative defense. *See Wyatt*, 297 F.3d at 414; *Watts*, 170 F.3d at 511; *Williamson*, 148 F.3d at 466- 67. Defendant's motion for summary judgment is DENIED.

[18][19] The City also contends that it is entitled to a judgment in its favor because it "took prompt remedial measures to correct [Jackson's] behavior" after Rodriguez made the July 1997 report to McAnulty. (Defendant's Motion at 21). *704 But it bears repeating that, to succeed on the *Faragher/Ellerth* affirmative defense on a motion for summary judgment, an employer must establish *both* of the essential elements by a preponderance of the evidence. *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275; *Wyatt*, 297 F.3d at 409. Because the City cannot show that Plaintiff acted unreasonably, its motion fails, even if the second prong of the defense could be proven by a preponderance of the evidence. *See Wyatt*, 297 F.3d at 414. In an abundance of caution, however, the court will address Defendant's argument that the City responded to Rodriguez's complaint in a reasonable fashion when McAnulty "called IAD and spoke with the on-duty Lieutenant to seek advice"; "called Jackson at home and told him to leave Plaintiff alone"; and held the closed-door meeting with Jackson and Rodriguez. (Defendant's Motion at 20; Defendant's Reply at 7).

[20][21] It is well-settled that, to avoid liability for a hostile workplace environment, an employer must take "prompt remedial action" to end the unwelcome behavior. *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 615 (5th Cir.1999) (quoting *Jones v. Flagship Int'l*, 793 F.2d 714, 720 (5th Cir.1986)). But whether an employer's action was appropriate is a fact intensive inquiry. *Skidmore*, 188 F.3d at 615; *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 479 (5th Cir.1989). As the Fifth Circuit has explained, repeatedly,

> Not every response by an employer will be sufficient to discharge its legal duty. Rather, the employer may be liable despite having taken remedial steps if the plaintiff can establish that the employer's response was not "reasonably calculated" to end the harassment.

*Skidmore*, 188 F.3d at 615-16; *Waltman*, 875 F.2d at 479 (brackets omitted). In many cases, courts have held that an employer's actions were "remedial" because "the offending behavior in fact ceased." *Skidmore*, 188 F.3d at 616 (citing *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 263 (5th Cir.1999); *Waymire v. Harris County*, 86 F.3d 424, 429 (5th Cir.1996); *Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 309-10 (5th Cir.1987)). Here, although Jackson did avoid Rodriguez "for a while" after the meeting with McAnulty, she has testified that he later resumed the offensive behavior. (Rodriguez Depo., p. 73; *and see* Rodriguez Statement, pp. 5, 7-9). Accordingly, there was no "complete cessation of harassment," sufficient to demonstrate that the City took effective remedial action. *See Skidmore*, 188 F.3d at 616 (quoting *Indest*, 164 F.3d at 263).

[22] An employer's action may also be considered remedial if it is taken by one with "authority to address the harassment problem." *See Williamson*, 148 F.3d at 466 (citing *Nash v. Electrospace Sys., Inc.*, 9 F.3d 401, 404 (5th Cir.1993)). For that reason, the Fifth Circuit has specified that when an employment structure is hierarchical, as with HPD, the employer must "provide an effective way around that hierarchy, so that someone subject to harassment by a supervisor could report the harassment and allow the city to remedy it." *Sharp v. City of Houston*, 164 F.3d 923, 930 (5th Cir.1999) ; *and see Faragher*, 524 U.S. at 808, 118 S.Ct. 2275 . In this instance, the City argues that appropriate remedial measures were taken by Sergeant McAnulty when he learned of Rodriguez's claims. But Sergeant McAnulty answered directly to Lieutenant Jackson in the HPD hierarchy. It is obvious, that not only did McAnulty have no authority to fire or transfer the alleged harasser, or to discipline him if he failed "to cease his *705 harassing behaviors," he was placed in an untenable situation in the first place when he attempted to curb his own superior's conduct. *Cf. Williamson*, 148 F.3d at 466. McAnulty's attempt to remedy the situation himself, without following the HPD "General Order on Discrimination and Harassment," leaves a fact question remaining on whether that response to Rodriguez's complaint was reasonable.

The official HPD policy on discrimination and harassment is detailed in the General Order, and it is explicit as to the steps that a supervisor is to take

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

250 F.Supp.2d 691
250 F.Supp.2d 691
(Cite as: 250 F.Supp.2d 691)

Page 13

when a subordinate complains of sexual misconduct. (*See* General Order 300-11, ¶ 4: Supervisor's Responsibilities). First, the supervisor must "immediately ... [d]etermine whether the facts presented by the complainant warrant a formal investigation or lend themselves to an informal resolution." (*Id.* ¶ 4.a). In this context, it should be noted that "informal resolution" has a specific definition. It is true that "informal resolutions" may take a variety of forms, which "include, but are not limited to, mediation, training, and counseling." (*Id.* ¶ 3: Resolution Process). However, under the HPD policy, "[t]he type of informal resolution offered to disputing parties will be determined by the Chief of Police." (*Id.*). The chosen method is then "administered through the Women's Issues Unit." (*Id.*). A supervisor has no discretion to choose the form of an informal resolution on his own, or to initiate an informal resolution without first reporting "the incident through the complaining employee's chain of command to the Chief of Police." (*See id.* ¶ 4.c). Further, "[i]f individuals in the complaining employee's chain of command are named as parties to the complaint," the supervisor is instructed to bypass those individuals by reporting "directly to the Women's Issues Unit." (*Id.*). In contrast to an "informal resolution," a "[f]ormal resolution requires a thorough investigation by the Internal Affairs Division in conjunction with appropriate discipline for sustained violations of department policy." (*Id.*). Supervisors are instructed that, "should anyone involved with the complaint decline to participate in the informal resolution process, the matter *will be* referred to the Internal Affairs Division for formal investigation." (*Id.* ¶ 3) (emphasis added). If such a formal investigation is warranted, then the supervisor must "complete a record of complaint." (*Id.* ¶ 4.b). Finally, when "individuals in the complaining employee's chain of command are named as parties to the complaint," the formal record of complaint is to be sent directly to IAD. (*Id.*).

Here, then, it is clear that the HPD General Order allows employees to bypass the Department's hierarchy, when appropriate, so that complaints of harassment by a superior are resolved by persons outside the complainant's chain of command. Under this policy, McAnulty was required, as Rodriguez's immediate supervisor, to "report the incident ... to the Women's Issues Unit," if not to IAD. (*Id.* ¶¶ 4.b, c). Instead, and understandably in this case, McAnulty attempted to resolve the harassment complaint against Lieutenant Jackson on his own. But this attempt was outside the required procedures and, perhaps for that reason, it allegedly failed. Because McAnulty acted outside the HPD policy, a fact question remains on whether his response to Plaintiff's complaint was a reasonable attempt by the City to remedy the behavior alleged. *See Faragher*, 524 U.S. at 808, 118 S.Ct. 2275; *Skidmore*, 188 F.3d at 615; *Williamson*, 148 F.3d at 466. Accordingly, the City cannot succeed on a summary judgment motion based on the *Faragher/Ellerth* affirmative defense, and Defendant's motion is DENIED.

**Conclusion**

Based on the foregoing, it is ORDERED that the motion by the City of Houston, for *706 summary judgment on Plaintiff's claim of hostile workplace sexual harassment, is DENIED.

The Clerk of the Court shall enter this order and provide a true copy to all counsel of record.

250 F.Supp.2d 691

**Motions, Pleadings and Filings (Back to top)**

. 4:01CV01970 (Docket)

(Jun. 13, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.